UNITED STATES, Appellee,

v.

Francisco J. PARRA–IBANEZ,
Defendant, Appellant.

No. 90–1768.

United States Court of Appeals,
First Circuit.

Heard Jan. 9, 1991.

Decided June 19, 1991.

Rafael F. Castro Lang, San Juan, P.R., for defendant, appellant.

Rosa Emilia Rodriguez Velez, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., was on brief for appellee.

Before CAMPBELL and SELYA, Circuit Judges, and POLLAK *, Senior District Judge.

LOUIS H. POLLAK, Senior District Judge.

Appellant Francisco J. Parra–Ibañez and a travelling companion were arrested in the Luis Muñoz Marin International Airport in San Juan, Puerto Rico, shortly after their arrival on a plane from Colombia. Thereafter they were indicted on three drug counts—possession of cocaine with intent to distribute, importation of cocaine, and transportation of cocaine by aircraft. After initially pleading not guilty, Parra entered into an agreement with the government under which he would plead guilty to the possession count—a plea entailing a five-year mandatory minimum prison sentence.

The first change of plea hearing was adjourned to provide an opportunity for a determination of defendant's mental competence. At a subsequent hearing, the dis-

* Of the Eastern District of Pennsylvania, sitting by designation.

trict court was advised by an examining psychiatrist that Parra was competent. A second change of plea hearing took place a week later. At the outset of the guilty plea colloquy, Parra answered "medication" to the judge's question "Have you taken medicine, drugs or alcohol in the last 24 hours?" Parra identified three medications that he had taken—Ativan, Halcion and Restoril—and said "Yes, sir" to the judge's question "Ativan, is that a drug to control your nerves or something?" Further on in the colloquy, the judge inquired about the appellant's understanding of the change of plea proceeding and of the maximum penalty that could be imposed; appellant responded satisfactorily to both questions. Also, the judge inquired of defense counsel and of the federal prosecutor whether they were satisfied that Parra was competent to plead, and both counsel responded in the affirmative. The guilty plea was accepted.

Four months later, the district court imposed the mandatory minimum five-year prison sentence. Thereafter, Parra moved for resentencing on the ground that, as utilized by federal prosecutors in Puerto Rico with respect to Colombians, the statutory and sentencing-guidelines provisions mandating a minimum five-year sentence are unconstitutional. The district court has not acted on that motion.

Parra has not at any time, either prior or subsequent to sentence, moved in the district court to withdraw his guilty plea. On appeal, Parra contends that two errors were committed below. First, Parra argues that, given the fact that the judge was advised by Parra that he had recently taken three medications, the judge's inquiry into Parra's understanding of the implications of the proposed guilty plea was not sufficient to comply with the strictures of Rule 11 of the Federal Rules of Criminal Procedure which are calculated to insure the voluntary and intelligent character of the plea.[1] Second, Parra contends that the district court erred in failing to determine that the relevant statutory and guidelines provisions calling for a mandatory minimum five-year sentence are, at least as applied to Colombians in Puerto Rico, violative of due process.[2]

For the reasons that follow, we conclude that the district court's guilty plea colloquy fell short of Rule 11 standards by failing to explore questions raised by appellant's acknowledged use of prescription medications. We remand to the district court for consideration of a factual issue we cannot resolve on the present record—namely, whether the medications taken by the appellant at the time of changing his plea could have interfered with his ability to enter a voluntary and intelligent guilty plea. We also conclude that appellant's constitutional challenge to his mandatory

1. **Rule 11** provides in part:
 (c) **Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
 (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense ...

 \* \* \* \* \* \*

 (d) **Insuring that the Plea is Voluntary.** The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement ...

 \* \* \* \* \* \*

 (h) **Harmless Error.** Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.

2. As discussed below, see Part I, *infra,* Parra did not move to have the district court consider the constitutionality of these statutory and guidelines provisions until more than a month after his sentence had already been imposed.

minimum five-year sentence is not properly before us; we therefore decline to consider that aspect of the appeal, but without prejudice to the appellant's right to raise and revisit the validity of the sentence in the context of other proceedings.

## I.

On August 1, 1989, federal customs agents inspecting airline passengers arriving from Colombia found approximately one kilogram of cocaine stashed in the false bottom of Parra's suitcase. He and his travelling companion, who was also found to have approximately one kilogram of cocaine in his suitcase, were arrested and subsequently charged in a three-count indictment with possessing cocaine with intent to distribute, with importing cocaine, and with transporting cocaine by aircraft (and with aiding and abetting each other in the foregoing).[3] Although on arraignment Parra pleaded not guilty, he later executed a plea agreement with the government in which he agreed to plead guilty to count one (possession and aiding and abetting).[4] The plea agreement recited that Parra "understands that he may be sentenced to a minimum term of five (5) years and to a maximum term of imprisonment of forty (40) years" and that "the government will not oppose [Parra's] request to be sentenced to the statutory minimum of five (5) years."

On October 16, 1989, at an initial change of plea hearing, Parra informed the court that he had undergone psychiatric treatment and had a history of drug abuse.[5]

Accordingly, at the government's request, the court adjourned the change of plea proceedings and ordered a mental evaluation as groundwork for a determination of competency. At a competency hearing conducted on January 30, 1990, Dr. Fernando Cabrera, a psychiatrist who had examined Parra, testified that Parra was competent to participate in further judicial proceedings.[6]

A second change of plea hearing was held on February 6, 1990. In the course of that hearing, the following colloquy took place:

THE COURT: Have you taken medicine, drugs or alcohol in the last 24 hours?

THE DEFENDANT: Medication.

THE COURT: Have you been under the care of a doctor for a mental or emotional condition?

THE DEFENDANT: Yes.

THE COURT: What medication did you take?

THE DEFENDANT: Ativan, Halcion and Restoril.

THE COURT: What is that?

THE INTERPRETER: Ativan, Halcion and Restoril.

THE COURT: Ativan, is that a drug to control your nerves or something?

THE DEFENDANT: Yes, sir.

The court did not undertake to explore whether any of the medications identified by Parra affected his ability to enter a voluntary and intelligent plea. The court did, however, at other points in the hearing,

---

**3.** The indictment recited violations of 21 U.S.C. §§ 841(a)(1), 952(a), 955, and of 18 U.S.C. § 2.

**4.** The presentence report, prepared by the probation officer, states that the "defendant pled guilty to count one in exchange for the dismissal of counts two and three." This bargain for counts two and three is not spelled out in so many words in the plea agreement itself.

**5.** On October 13, 1989, three days prior to his first change of plea hearing, Parra had written "Axion y Activan" in response to one of the questions—"Exactly what drugs, medicines or pills have you taken within the last seven (7) days?"—posed in a written questionnaire ("Petition to Enter Plea of Guilty") administered by the court.

**6.** Dr. Cabrera testified that he had not conducted a physical examination of Parra. In response to questions posed by defense counsel as to whether he was aware of any medications Parra was currently taking, Dr. Cabrera stated: "[a]s far as I know, right now I don't have any evidence right now. I called Dr. Prieto when he was in the penitentiary to prescribe some kind of mild tranquilizer.... Halcion.... No one knows the way it acts, really, whether it acts in the cortex or in the white matter of the brain or in which region. It really produces sleep in patients and tranquilizes the patient." See Transcript of February 6, 1990, at pp. 3–8.

inquire as to Parra's general ability to comprehend the proceedings:

THE COURT: And we had the mental competence hearing the other day, correct?

THE DEFENDANT: Yes, sir.

THE COURT: I am asking Mrs. Dieppa [defense counsel]. Mrs. Dieppa, is that correct?

MS. DIEPPA: Yes, your Honor.

THE COURT: And he found that he is fit to plea and to be tried.

MS. DIEPPA: Yes, your Honor, he was found competent by this Court.

THE COURT: Do you understand what is happening here today?

THE DEFENDANT: Yes, sir.

THE COURT: Do either of you the United States Attorney and the attorney for the defendant have any doubt as to this defendant's competent [sic] to plead at this trial?

MS. DIEPPA: Your honor, as far as I am concerned, no, he doesn't.

THE COURT: He is what?

MS. DIEPPA: No, he doesn't. There is none.

MS. RODRIGUEZ [Assistant United States Attorney]: The government has no doubt, your honor ...

THE COURT: Do you understand that you have a right to plead not guilty to every charge against you?

THE DEFENDANT: Yes, sir.

\*　　\*　　\*　　\*　　\*　　\*

THE COURT: What is the maximum punishment that the law provides for the offenses to which you want to plead guilty?

THE DEFENDANT: Forty years ...

At the conclusion of the hearing, the court accepted Parra's guilty plea. Defense counsel did not at that time, or at any subsequent time prior to perfecting this appeal, either object to or move to set aside the plea.

On March 20, 1990, the court granted a motion for further psychological evaluation submitted by defense counsel—while visiting Parra in prison, defense counsel had observed his client's "highly depressed" and "emotionally disturbed" condition and learned that he had recently attempted suicide.[7] An evaluation was conducted on March 27 by Francisco Umpierre, a clinical psychologist, who concluded, *inter alia*, that Parra

is in need of psychological treatment due to his strong depressive symptomatology and suicidal history and we may consider him as a high suicidal risk person, and every effort should be make [sic] to provide to him an adequate follow-up for his condition.

Due to his previous history of head confusion and the development of seizures the client should be seen by a neurologist to adequately assess the need for further medication.[8]

The presentence report, prepared by the probation officer on April 6, 1990, noted that "[d]efendant remains under psychopharmacological treatment."[9]

At no point, prior to filing this appeal, did defense counsel attempt to direct judicial attention to the issue of Parra's medications or suggest that such medications might interfere with Parra's competency to participate in judicial proceedings.

On June 20, 1990, Parra was sentenced to a five-year term of imprisonment. He filed a notice of appeal on June 28, 1990. On July 27, 1990, he filed a further motion in the district court, requesting that the statutory and guidelines provisions imposing a mandatory minimum term of imprisonment be declared unconstitutional and that he be resentenced accordingly. On oral argument before this court, it was

---

7. See Motion Requesting Psychological Evaluation of Defendant, filed February 27, 1990.

8. See Psychological Assessment of Francisco Parra Ibañez, March 27, 1990, p. 5 (included in appellant's addendum at 22).

9. The presentence report does not include any reference to the specific medications that the appellant identified in his change of plea hearing. From the record on appeal, it appears that no written objections to the presentence report were filed.

represented that the district court had not yet acted on that motion.

## II.

We first consider whether the issues presented can be entertained on appeal.

### The Rule 11 Challenge

■ Parra's first contention—that his guilty plea was deficient because the district judge failed to explore the consequences of Parra's acknowledged use of medications—is one that was not raised below. There is no doubt that Parra could have raised the issue at some point prior to the imposition of sentence by moving, pursuant to Rule 32(d) of the Federal Rules of Criminal Procedure,[10] to set aside his plea. Indeed, this is probably what he should have done (lest the cart of punishment find itself before the horse of guilt). However, Parra's failure to take such recourse in the district court does not preclude him from challenging his plea, for the first time, on direct appeal.

■ Although a court of appeals "will not normally consider a matter raised for the first time on appeal," *United States v. Daniels*, 821 F.2d 76, 81 (1st Cir.1987) (citing *Johnston v. Holiday Inns*, 595 F.2d 890, 894 (1st Cir.1979)), a Rule 11 challenge will not be deemed waived upon a party's failure to raise it in the district court. This is so because the standards Rule 11 brings to the plea bargaining process "protect[ ] not only the parties, but also the ' "fairness, integrity [and] public reputation of judicial proceedings." ' " *United States v. Daniels, supra*, 821 F.2d at 81 (quoting *United States v. Corbett*, 742 F.2d 173, 178 n. 12 (5th Cir.1984) (quoting *United States v. Adams*, 634 F.2d 830, 836 (5th Cir. 1981))). In short, the basic wisdom is that "an appellate court must determine compliance with Rule 11, even if a claim of non-compliance was never presented to the trial court." See *United States v. Van Buren*, 804 F.2d 888, 890 (6th Cir.1986) (explaining *United States v. Briscoe*, 428 F.2d 954, 957 (8th Cir.), *cert. denied*, 400 U.S. 966, 91 S.Ct. 378, 27 L.Ed.2d 386 (1970)); *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969);[11] *United States v. Coronado*, 554 F.2d 166, 170–71 (5th Cir.), *cert. denied*, 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977); *United States v. Daniels, supra.*

■ However, in deference to the ordinary constraints of appellate procedure, an "appellate court may determine compliance with Rule 11 only on the [basis of the accumulated district court] record before it." See *United States v. Van Buren, supra*, 804 F.2d at 890 (explaining *United States v. Coronado, supra*, 554 F.2d 166). Thus, where additional facts must be found, relief cannot be had on direct appeal but must be pursued via 28 U.S.C. § 2255. See *United States v. Van Buren, supra*, 804 F.2d at 889–91 (Sixth Circuit considered appellant's claims—that there was no factual basis for his plea, that he failed to understand the charge—which could be decided by reference to transcript of plea colloquy and other formal filings, but declined to consider appellant's claim of incompetent counsel which raised facts beyond the record); *United States v. Coronado, supra*, 554 F.2d at 170–71 (Fifth Circuit considered appellant's claim that he failed to understand the charges, but declined to consider his claims of coercion and ineffective counsel); *United States v. Briscoe, supra*, 428 F.2d at 956–57 (Eighth Circuit declined to consider claim of involuntariness which required factual determination, but considered sufficiency of judge's Rule 11 inquiry on basis of formal record); cf. *United States v. Daniels, supra*, 821 F.2d at 81 (considering appeal of

---

**10. Rule 32(d) Plea Withdrawal.**
If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.

**11.** Although the *McCarthy* opinion is "silent as to whether [the defendant] filed a motion to withdraw his plea [in the trial court], the government's brief in the Supreme Court discloses that no motion was filed." *United States v. Van Buren, supra*, 804 F.2d at 890 n. 2.

specific issue of involuntariness not raised at the district court level, where facts surrounding general issue of involuntariness had been explored on the record by the district court) (citing *United States v. Blackner*, 721 F.2d 703, 705 (10th Cir.1983) ("While this specific claim [of Rule 11 violation] was not asserted in the motion, the facts about this issue were clearly developed at the hearing on the motion to withdraw the guilty pleas ...")).

The issue raised here goes to the sufficiency of the district court's Rule 11 inquiry (with regard to Parra's acknowledged use of medications) and can be decided wholly on the basis of the formal record accumulated thus far—that is, by consulting the transcript of the change of plea colloquy. Thus, Parra's Rule 11 challenge is properly before us, and in Part III of this opinion we will consider its merits.

*The Constitutional Challenge*

■ Parra's second contention is that the district court erred in failing to declare the statutory and guidelines provisions imposing mandatory minimum sentences violative of his constitutional rights. He submits that these provisions have disturbed the traditional balance of sentencing authority by giving prosecutors, who control the plea bargaining process, undue influence over sentencing outcomes. He also submits, as part of the same argument, that prosecutors in Puerto Rico discriminate against Colombian citizens, such as himself, who have been stigmatized as drug dealers.

This claim is not properly before us, and therefore we decline to consider its merits. Claims of discrimination, which tend to be

fact-intensive, are best heard, at least in the first instance, in a district court.[12] Here, our jurisdiction is particularly suspect because the district court, although asked to consider the issue on Parra's motion for resentencing, has not yet ruled. Moreover, it is not clear that the district court can or should rule on the issue, since Parra may be deemed to have failed to present this issue to the district court in a timely fashion: Parra's constitutional challenge was raised for the first time in a motion submitted by defense counsel to the district court after a notice of appeal had already been filed and more than one month after sentence had been imposed.[13]

Our rejection of Parra's constitutional claim is without prejudice to reassertion of the claim in a proceeding pursuant to 28 U.S.C. § 2255.

**III.**

■ Parra contends that the district court erred in accepting his change of plea without inquiring as to the nature and effect of the medications he said he had been taking at or around the time of changing his plea. Parra submits that, once a court is informed in the course of a change of plea hearing that a defendant is under the influence of medications, the court, in compliance with Rule 11, must establish, as a predicate for accepting or rejecting a plea, whether the defendant has taken medications that render him incapable of entering a voluntary and intelligent plea. See *United States v. Cole*, 813 F.2d 43, 46–48 (3d Cir.1987).

In *Cole*, the Third Circuit held that "Rule 11 counsels a district court to make further

---

**12.** To the extent that Parra's constitutional argument raises questions of law untrammeled by questions of fact—that is, to the extent that Parra claims that the guidelines and statutes imposing mandatory minimum sentences are unconstitutional on their face—we hold the argument to be without merit. See *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (guidelines do not violate constitutional separation of powers); *McMillan v. Pennsylvania*, 477 U.S. 79, 89–90, 106 S.Ct. 2411, 2417–18, 91 L.Ed.2d 67 (1986); *United States v. La Guardia*, 902 F.2d 1010, 1014 (1st Cir.1990) ("Congress has the power to cabin judicial sentencing discretion, or even to elimi-

nate discretion entirely, by fixing precise rather than indeterminate sentences.").

**13.** This case does not fit within, nor is it even close kin of, the small category of cases in which it is a proper exercise of appellate jurisdiction to address an issue raised for the first time on appeal. This is not a case in which "the new issue is strictly a question of law," is "'almost certain to be presented in identical terms in other cases,'" and/or "can be resolved with certitude on the existing record." *United States v. La Guardia, supra,* at 1013.

inquiry into a defendant's competence to enter a guilty plea once the court has been informed that the defendant has recently ingested drugs or other substances capable of impairing his ability to make a knowing and intelligent waiver of his constitutional rights." *Id.* at 46. Defendant Cole had been indicted on several counts of heroin distribution. During his change of plea hearing, he informed the district court that "I had some drugs last night." However, the district court "simply failed to develop the record with respect to the defendant's state of mind through further questioning and failed to make a finding of competence which took the assertion of recent drug use into account." *Id.* The Third Circuit, considering this matter in the context of Cole's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255,[14] concluded that the "failure" of the district court "to pursue the issue of Cole's state of mind through further questioning precludes a finding that Cole voluntarily and knowingly entered a plea of guilty." *Id.*

It is apparent from the opinion in *Cole* that what was dispositive, in the view of the Third Circuit, was its assessment of the case as one in which a district court "has been informed that the defendant has recently ingested drugs or other substances capable of impairing his ability to make a knowing and intelligent waiver of his constitutional rights." *Id.*[15] With such information before it, a district court, according to *Cole*, must broaden its Rule 11 inquiry with a view to assessing the impact of the ingested substances on the defendant's capacity to understand the change-of-plea process and intelligently determine a proper course of action.

The principles that undergird *Cole* were authoritatively articulated by Chief Justice Warren more than twenty years ago in *McCarthy v. United States*, 394 U.S. 459, 466–67, 89 S.Ct. 1166, 1170–72, 22 L.Ed.2d 418 (1969):

A defendant who enters ... a [guilty] plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461] (1938). Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.

 \* \* \* \* \* \*

To the extent that the district judge .... exposes the defendant's state of mind on the record through personal interrogation, he not only facilitates his own determination of a guilty plea's voluntariness, but he also facilitates that determination in any subsequent post-conviction proceeding based upon a claim that the plea was involuntary.

▮ In the present case, as in *Cole*, the district court had reason to suspect that the medications taken by the accused might impinge upon the accused's capacity to enter a voluntary and intelligent plea. At the outset of the Rule 11 hearing, Parra confirmed the district judge's understanding that he had "been under the care of a doctor for a mental or emotional condition." And Parra advised the judge that in that connection he had, within the previous twenty-four hours, taken three medications —Ativan, Halcion and Restoril. Parra affirmed that, as the judge supposed, "Ativan ... is ... a drug to control your nerves or something." Although the judge's further questions did elicit (1) from Parra assurances that he understood the proceedings and knew that a maximum sentence of forty years could be imposed, and (2) from defense counsel and prosecutor their joint assurance that appellant was

---

**14.** The petition had been denied by the district court, and the Third Circuit reversed.

**15.** In his habeas petition, Cole claimed that "he had ingested approximately four hundred dol-

lars worth of heroin and two hundred fifty dollars worth of cocaine during the evening prior to and up until five or six a.m. on the morning of his plea hearing." 813 F.2d at 44.

competent to plead guilty, the judge did not inquire what dosages of Ativan, Halcion and Restoril Parra had ingested and what effects, if any, such medications might be likely to have on Parra's clear-headedness.[16] The judge, though plainly making a substantial inquiry, did not probe deeply enough. We join the Third Circuit, and hold that the judge was obligated by Rule 11 to ask further questions.

## IV.

 Having determined that the district court, once apprised of Parra's psychopharmacological regime, did not sufficiently comply with the obligations imposed by Rule 11, we now turn to consideration of the appropriate remedy. The standard means of redressing a Rule 11 violation is to vacate the plea (and the consequent sentence) and allow the defendant to plead anew. See *United States v. McCarthy, supra,* 394 U.S. at 463–64, 89 S.Ct. at 1169–70. Where the Rule 11 inquiry faltered in the course of establishing some aspect of voluntariness, intelligence, or competence, vacating the plea is the preferred approach because of the difficulty inherent in attempting to assess retrospectively the de-

fendant's state of mind at the time of entering his plea. *Id.* at 469–471, 89 S.Ct. at 1172–73; *Drope v. Missouri,* 420 U.S. 162, 183, 95 S.Ct. 896, 909, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 386–87, 86 S.Ct. 836, 842–43, 15 L.Ed.2d 815 (1966).[17]

While recognizing in general the wisdom of vacating a plea that is invalid under Rule 11,[18] we think that such an approach would not be suited to the particular circumstances of this case. Our decision to depart from the preferred course—a decision that comports with what other courts of appeals have done in similar circumstances—reflects two aspects of the present case.

 *First,* the traditional concerns about *ex post* determinations of a defendant's subjective mental state, which have frequently led appellate courts to vacate deficient pleas, do not apply here. It is quite possible, even at this relatively late stage, to conduct an inquiry that would consider (1) the properties of Ativan, Halcion, and Restoril, taken individually and in combination, and (2) the dosages and schedule of Parra's particular regime.[19] That is, a determination as to whether Parra's med-

16. The obligation of further inquiry was not ameliorated by the fact that the judge, on the basis of psychiatric testimony, had found Parra competent only a week before. Rather, the obligation of further inquiry was enhanced by Parra's recital in that prior hearing of a history of drug use, depression and attempted suicide. Appellant's Appendix, pp. 6, 52.

17. "The determination of whether a district court can hold a meaningful retrospective competency hearing is necessarily a case-by-case one.... The courts apparently agree, however, that retrospective determinations of competency are undesirable but not *per se* impermissible." See *Miller v. Dugger,* 838 F.2d 1530, 1544 & n. 19 (11th Cir.1988) and cases cited therein. But see *Cole, infra,* note 22.

18. A number of courts have opted in favor of remanding a Rule 11 challenge in order to supplement the record, instead of vacating the plea and remanding for repleading, where the issue goes to the district court's, rather than the defendant's, state of mind (i.e., where the record does not make clear what the court concluded in the course of conducting a guilty plea colloquy). See *United States v. Goldberg,* 862 F.2d 101, 106–09 (6th Cir.1988) (discussing cases); e.g., *United States v. Allen,* 804 F.2d 244, 247–48

(3d Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 697 (1986); *United States v. DelSanter,* 433 F.2d 972 (2d Cir.1970); *United States v. Antoine,* 434 F.2d 930 (2d Cir.1970). *Cf. United States v. Levy,* 897 F.2d 596, 598–99 (1st Cir.1990) (remanding to district court for determination whether, at sentencing hearing at which certain factual recitals in presentence report were controverted by defendant, sentencing judge had effectively complied with Federal Rule 32(c)(3)(D) requirement that controverted factual allegation which is unresolved not be relied on in fashioning sentence: "Where, as here, the record admits of possible ambiguity, our practice is to remand for a limited purpose.").

19. As to this second factual issue, we presume that the government will be able to locate and present to the district court records establishing what prescription drugs were administered to Parra during the twenty-four hours preceding the February 26, 1990 change of plea hearing. *Cf. United States v. Hollis,* 569 F.2d 199, 203 & n. 4 (3d Cir.1977) ("[T]he difficulties of retrospectively ascertaining an accused's competence to stand trial, which may pose serious problems in some situations, are not so significant here that such an after-the-fact conclusion would be untenable or impossible to reach.").

ications could have significantly interfered with his mental functioning at the time of entering his plea could be made on the basis of objective facts and scientific testimony,[20] without venturing to reconstruct the actual effect of the regimen on Parra's then state of mind. If it is demonstrated that Parra's medicinal regimen did not have the potential to produce a significant mind-altering effect, then the Rule 11 violation could be deemed harmless and the guilty plea left undisturbed. See Rule 11(h), *supra* note 1.[21] If, on the other hand, it is found that the regimen did have the potential significantly to alter the mind,[22] then the plea could be vacated at that point.[23]

*Second,* the Rule 11 violation at issue here is not one that cries out for full-scale relief. While Rule 11 requires an inquiry into voluntariness, it does not specifically mention medication. Here, the judge, in conducting the change of plea colloquy, posed questions covering all of the basic points entailed in the standard Rule 11 schema, and determined that the plea was voluntary as Rule 11 requires. The problem with the colloquy lay in the judge's failure to pose a series of follow-up questions in response to a single comment made by Parra that was not underscored by counsel nor sufficiently alarming to constitute per se grounds for rejection of Parra's plea. Insofar as this type of departure

**20.** In this regard, we note that Parra has submitted, as part of his brief to this panel, passages from the Physician's Desk Reference describing Halcion, Ativan, and Restoril. See addendum to appellant's brief at 25–33. Although we do not have the authority to make findings of fact, a district court would be in a position to consider the nature and possible consequences of these medications.

**21.** Cf. *Steinsvik v. Vinzant,* 640 F.2d 949, 953 & n. 5 (9th Cir.1981) (appellant was competent to plead guilty, even though thirty-six hours prior to entering his plea he had been hospitalized for an overdose of barbiturates, where evidence introduced in habeas proceeding indicated that barbiturate medication has no direct impact on a person's ability to make rational decisions).

**22.** In *Cole, supra,* the Third Circuit declined to "remand[ ] the case to the district court for an evidentiary hearing designed to determine whether Cole was competent to make a knowing and voluntary" plea, noting the "difficulty inherent in retrospective competency determinations." 813 F.2d at 47. There, however, there was no issue whether the drugs ingested by the appellant ("approximately four hundred dollars worth of heroin and two hundred fifty dollars worth of cocaine during the evening prior to and up until five or six a.m. on the morning of his change of plea hearing," see *id.* at 44) were capable of significantly altering his mind, the mind-altering potential of a substantial quantity and variety of illicit drugs being obvious to any federal judge. The same cannot be said here. Therefore, we depart from the procedural solution recommended by *Cole* (vacating the plea in order to allow the appellant to elect whether to plead anew or proceed to trial) in order to accomplish what was unnecessary in *Cole*—an initial determination whether the accused's medicinal regime was such that it could compro-

mise his ability to formulate a knowing and intelligent guilty plea.

**23.** Our decision in *United States v. Pellerito,* 878 F.2d 1535 (1st Cir.1989), is not to the contrary. There, considering an appeal from a district court's denial of a motion to withdraw a plea, where the appellant apparently neglected in the course of changing his plea to apprise the judge of the extensive regimen of prescription drugs he had taken while in prison awaiting trial, we held that "[t]he mere fact that [appellant] took potentially mood-altering medication is not sufficient to vitiate his plea. There must be some evidence that the medication affected his rationality." *Id.* at 1542 (citations omitted). We emphasized the district court's finding that the appellant had produced no evidence, in moving to withdraw his plea, to the effect that the medication he had been taking caused impairment of his cognitive processes. *Id.*

In the present case, appellant does not bear a similar burden of production because the flaw in the plea was a result of the court's error, not his own. Our inquiry is not whether the appellant's mind was altered, but whether the court's error can be dismissed as harmless. Thus, in the present context, in contrast to *Pellerito,* it would be sufficient for appellant to establish that his medicinal regime had the potential to interfere with his cognitive capacities; he would not need to establish that it actually did. In all aspects of this inquiry, the government must bear the ultimate burden of proof: thus if, for example, the government is not satisfied that Parra's representations as to schedule and amount of medications ingested are correct (or believes any evidence presented, such as prescriptions or doctor's notes, to be misleading), the government—in order to vindicate the court's error as a harmless one—will have to prove by a preponderance of the evidence that Parra's medicinal regimen was significantly dif-

from Rule 11 admits of simple resolution by means of a supplemental corrective hearing, we think that such a course should be taken instead of vacating what might be, for all purposes, a perfectly valid plea.[24]

In short, because there is a distinct possibility that the district judge's error was a harmless one, and because such question can be decided on the basis of a relatively simple inquiry by the district judge, we remand this aspect of Parra's appeal to the district court for further consideration in the form of an evidentiary hearing—in the manner described above—to assist this court in determining whether the error was a harmless one.[25]

### V.

For the foregoing reasons, we conclude that (1) Parra's constitutional challenge is not properly before this court at this time (a determination that is without prejudice to Parra's right to raise this constitutional claim in a collateral proceeding); (2) Par-

ra's Rule 11 challenge is properly before this court; and (3) the district court erred in failing to conduct a further inquiry as to the effects of Parra's medications. Finally, we conclude (4) that Parra's Rule 11 challenge should be remanded to the district court[26] for the taking of evidence which will enable this court to determine whether the Rule 11 error was harmless. The district court should proceed expeditiously to schedule the required hearing and shall thereupon transmit its findings and recommendations to the clerk of this court. In the interim, we shall retain jurisdiction. *It is so ordered.*

---

. ferent from that reported or documented by him.

**24.** *McCarthy, supra,* which demands that a deficient plea be vacated, was decided prior to the adoption of the harmless error proviso contained in Rule 11(h). See, *supra,* note 1. As the Advisory Committee notes in its discussion of Rule 11(h):

> Though the *McCarthy* per se rule may have been justified at the time and in the circumstances which obtained when the plea in that case was taken, this is no longer the case. For one thing, it is important to recall that *McCarthy* dealt only with the much simpler pre–1975 version of Rule 11, which required only a brief procedure during which the chances of a minor, insignificant and inadvertent deviation were relatively slight. This means that the chances of a *truly* harmless error ... are much greater under present Rule 11 than under the version before the Court in *McCarthy.* It also means that the more elaborate and lengthy procedures of present Rule 11, again as compared with the version applied in *McCarthy,* make it more apparent than ever that a guilty plea is not "a mere gesture, a temporary and meaningless formality reversible at the defendant's whim," but rather " 'a grave and solemn act,' which is 'accepted only with care and discernment.' " *United States v. Barker,* 514 F.2d 208 (D.C.Cir. 1975), quoting from *Brady v. United States,* 397 U.S. 742 [90 S.Ct. 1463, 25 L.Ed.2d 747] (1970). A plea of that character should not be overturned, even on direct appeal, when there

has been a minor and technical violation of Rule 11 which amounts to harmless error.

**25.** Cf. *Cordova v. Cox,* 351 F.2d 269 (10th Cir. 1965) (remanding for development of further factual record where district court that considered the validity of the appellant's guilty plea in the context of a habeas proceeding based its conclusions on a record that included only "conclusional findings of fact" and not "specific findings of fact.").

In entertaining Parra's claim on direct appeal only to determine that it cannot be decided dispositively absent development of a further factual record, we do not mean to undermine our earlier conclusion, see Part II, *supra,* that direct appeal will lie only where the underlying Rule 11 challenge can be decided on the basis of the existing district court record. Direct appeal lies here because the sufficiency of the district court's Rule 11 inquiry can be determined on the existing record. Since the separate but related question of whether such error was harmless cannot be decided on the existing record, we decline to consider that aspect of this issue on appeal prior to further development by the district court of the requisite factual record. Once the district court makes the relevant findings of fact, we will decide whether the error was harmless.

**26.** We see no reason why the district judge who has already immersed himself in this case and carried it the whole way through should not conduct the proceedings on remand.