March 27, 1995 United States Court of Appeals United States Court of Appeals
 For the First Circuit For the First Circuit
 

No. 94-1710

 MARTIN CAREY,

 Plaintiff, Appellant,

 v.

 UNITED STATES OF AMERICA,

 Defendant, Appellee.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. Gene Carter, U.S. District Judge] 

 

 ERRATA SHEET ERRATA SHEET

 Please make the following changes to the opinion issued on
March 22, 1995:

 Page 2, line 1 - change "18 U.S.C." to "28
 U.S.C."

 Page 15, line 2 - change "18 U.S.C." to "28
 U.S.C."

 United States Court of Appeals United States Court of Appeals
 For the First Circuit For the First Circuit
 

No. 94-1710

 MARTIN CAREY,

 Plaintiff, Appellant,

 v.

 UNITED STATES OF AMERICA,

 Defendant, Appellee.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. Gene Carter, U.S. District Judge] 

 

 Before

 Selya, Circuit Judge, 
 Bownes, Senior Circuit Judge, 
 and Stahl, Circuit Judge. 

 

Judith Mizner with whom Marshall A. Stern was on brief for 
appellant.
Margaret D. McGaughey, Assistant United States Attorney, with 
whom Jay P. McCloskey, United States Attorney and Richard W. Murphy, 
Assistant United States Attorney, were on brief for appellee.

 

 March 22, 1995
 

 STAHL, Circuit Judge. Pursuant to 28 U.S.C.  STAHL, Circuit Judge. 

2255, petitioner Martin Carey ("Carey") moved to (1) vacate

his guilty plea on the ground that he was taking prescription

drugs at the time of his change of plea, and (2) set aside

his sentence because of claimed ineffective assistance of

counsel. A magistrate judge recommended denial of Carey's

motion and, following de novo review, the district court 

agreed. We affirm. We discuss separately the two issues and

the facts giving rise to them.

 DISCUSSION DISCUSSION 

A. Voluntariness of Plea 

 1. Relevant Facts 

 On August 2, 1990, Carey initially appeared and

pled not guilty to a one-count indictment charging

manufacture of marijuana. He was released on bail. On

October 18, 1990, Carey and the government entered into a

written agreement under which he would enter a plea of guilty

conditioned on his right to appeal a previously denied motion

to suppress. 

 On the same day, Carey and his retained counsel,

Pasquale Perrino, appeared for the change-of-plea hearing.

In a handwritten affidavit appended to his habeas motion,

Carey states that, "[a]t the time I entered my change of

plea, I was taking prescription drugs" to help deal with

depression arising from the recent deaths of my daughter and

 -2- 2

father. Carey further states that: "I believe that these

medications affected my judgment," and that, "[w]ithout them,

I do not believe that I would have decided to change my plea

at that time." Carey notes that, because of a drug test

administered in August 1990, "pretrial services was aware

that I was taking these medications." During the plea

colloquy, the district court did not ask Carey about use of

prescription medications.

 2. Discussion 

 Summary dismissal of a 2255 petition is

appropriate if it plainly appears from the face of the motion

that the movant is not entitled to relief. Rule 4(b) of the

Rules Governing 2255 Proceedings. While genuine issues of

material fact may not be resolved without a hearing, a

hearing is not required where a habeas motion (1) is

inadequate on its face, or (2) although facially adequate, is

conclusively refuted as to the alleged facts by the files and

records of the case. United States v. DiCarlo, 575 F.2d 952, 

954 (1st Cir.), cert. denied, 439 U.S. 834 (1978). The court 

must take the allegations contained in the petitioner's

motion as true, except to the extent that "they are

contradicted by the record or are inherently incredible, and

to the extent that they are merely conclusions rather than

statements of fact." Mack v. United States, 635 F.2d 20, 26- 

27 (1st Cir. 1980). 

 -3- 3

 "[T]he strictures of Rule 11 of the Federal Rules

of Criminal Procedure . . . are calculated to insure the

voluntary and intelligent character of the plea." United 

States v. Parra-Ibanez, 936 F.2d 588, 590 (1st Cir. 1991). A 

plea will be set aside if a violation of the rule implicates

one of its "core concerns," United States v. Allard, 926 F.2d 

1237, 1244 (1st Cir. 1991), but variances not affecting

substantial rights constitute harmless error, Fed. R. Crim.

Proc. 11(h). We have never stated that the voluntariness

requirement, indisputably a "core concern," see, e.g., United 

States v. Cotal-Crespo, No. 94-1354, slip op. at 7 (1st Cir. 

Jan. 30, 1995), compels the district court to ask a defendant

about prescription drug use, see Parra-Ibanez, 936 F.2d at 

595. Nonetheless, many judges routinely inquire about

alcohol or drug use during the Rule 11 colloquy. We have

made clear that voluntariness does require that, once the

court 

 "has been informed that the
 defendant has recently ingested
 drugs or other substances capable of
 impairing his ability to make a
 knowing and intelligent waiver of
 his constitutional rights", . . .
 [it] must broaden its Rule 11
 inquiry with a view to assessing the
 impact of the ingested substances on
 the defendant's capacity to
 understand the change-of-plea
 process and intelligently determine
 a proper course of action.

 -4- 4

Id. (quoting United States v. Cole, 813 F.2d 43, 46 (3d Cir. 

1987)). 

 Although the district court did not ask Carey

directly about prescription drug use, our review of the

transcript reveals nothing that even arguably suggests that

the defendant was not in complete command of his faculties.

Cf. United States v. Pellerito, 878 F.2d 1535, 1542 (1st 

Cir. 1989) (mere fact defendant ingested potentially mood-

altering medication insufficient to vitiate plea; there must

be some evidence that the medication affected his

rationality), cert. denied, 502 U.S. 862 (1991). Indeed, at 

one point Carey sought to correct the court's

characterization of the plea. ("Q. Do you acknowledge you

are in fact guilty as charged in this indictment? A.

Conditionally, yes sir.") 

 Nor do we agree with Carey that the court was put

on constructive notice because pretrial services had the

August 1990 drug-test results. As we have frequently

observed, the district court is a busy place, see, e.g., 

United States v. Panitz, 907 F.2d 1267, 1273 (1st Cir. 1990), 

and the Rule 11 strictures certainly do not diminish a

judge's burdens, see, e.g., United States v. Medina-Silverio, 

30 F.3d 1, 3 (1st Cir. 1994). In this instance, we believe

the protections in the Rule are sufficient without requiring

a judge to search out all possibly relevant information

 -5- 5

contained in every government agency's files. The district

court properly denied Carey's voluntariness claim. Assuming

the facts in Carey's allegations as true, we nonetheless

conclude that he is not entitled to relief, and his motion to

vacate fails. 

 -6- 6

B. Ineffective Assistance of Counsel 

 Carey premises his ineffective-assistance-of-

counsel claim on the government's refusal to move for a

downward departure pursuant to U.S.S.G. 5K1.11 for

substantial assistance and the government's opposition to a

downward adjustment for acceptance of responsibility pursuant

to U.S.S.G. 3E1.1. We find his arguments unpersuasive.2

 1. Relevant Facts 

 On an unspecified date following the change-of-plea

hearing, Carey and Perrino traveled to Portland, Maine, for a

debriefing by the U.S. Drug Enforcement Administration

("DEA"). At this time, Perrino (Carey's counsel) also

represented Joe Darling ("Darling"), who faced state charges

relating to the same marijuana-growing operation that led to

Carey's federal charges. On the way to Portland, Carey

claims Perrino told him to "tell the government everything

[he knew] but that there was no reason to mention Mr. Darling

  

1. U.S.S.G 5K1.1 in relevant part states: 

 Upon motion of the government stating
 that the defendant has provided
 substantial assistance in the
 investigation or prosecution of another
 person who has committed an offense, the
 court may depart from the guidelines. 

2. The magistrate's report considered Carey's ineffective-
assistance-of-counsel claim in the context of vacating his
guilty plea rather than sentencing. As we discuss below,
Carey's motion alleges that ineffective assistance of counsel
affected his sentencing and not his entry of plea. 

 -7- 7

at all." Carey did not mention Darling at that debriefing.

Several weeks later, at a second debriefing session with DEA

immediately prior to his sentencing hearing, Carey did

discuss Darling. Carey contends that Perrino's conflict of

interest led to his initial failure to disclose Darling's

involvement, which in turn led to both the government's

refusal to file a motion pursuant to Section 5K1.1 and to the

government's opposition to a downward adjustment for

acceptance of responsibility. 

 The district court conducted Carey's sentencing

hearing on January 25, 1991. The presentence investigator

appended to his report a memorandum entitled "Acceptance of

Responsibility," which described an investigation undertaken

by state authorities of a separate marijuana-growing

operation. According to the memorandum, Carey actively

participated in this operation, which took place over a

period of about six weeks during the late summer and early

fall of 1990 (that is, following his initial appearance but

prior to his change-of-plea hearing). Darling was also

involved in this operation. As to cooperation, the

prosecutor stated at the sentencing hearing that the

information Carey had provided to date was not significant,

but that Carey pledged his future cooperation. The

government did not file a section 5K1.1 motion. During his

allocution, Carey stated, among other things, that "[t]here

 -8- 8

are no victims who will suffer long-term effects from this

crime except my family." The court concluded that, based on

Carey's post-charge conduct and his statement that there was

no long-term victim from the crime, Carey "has not truly

accepted responsibility for his conduct in this case, and

that his effort at the ninth hour . . . to cooperate with the

government, is not capable of sufficient evaluation for the

court to overcome the conclusion that is thereby yielded." 

 2. Discussion 

 To establish an ineffective-assistance-of-counsel

claim, a defendant must demonstrate (1) that counsel fell

below the applicable standard for performance, and (2) that

prejudice resulted. See, e.g., United States v. Fisher, 3 

F.3d 456, 463 (1st Cir. 1993) (citing Strickland v. 

Washington, 466 U.S. 668, 687 (1984)). Carey argues that 

prejudice per se exists. Prejudice is legally presumed if

"the defendant demonstrates that counsel `actively

represented conflicting interests' and that `an actual

conflict of interest adversely affected his lawyer's

performance.'" Strickland, 466 U.S. at 692 (quoting Cuyler 

v. Sullivan, 446 U.S. 335, 349-50 (1980)). The conflict of 

interest must be actual or "real." United States v. Fahey, 

769 F.2d 829, 834 (1st Cir. 1985). To establish an actual

conflict of interest, the defendant must show (1) the lawyer

could have pursued a plausible alternative defense strategy

 -9- 9

or tactic, and (2) the alternative strategy or tactic was

inherently in conflict with, or not undertaken, due to the

attorney's other interests or loyalties. United States v. 

Soldevila-Lopez, 17 F.3d 480, 486 (1st Cir. 1994). On this 

point, Carey's claim fails. 

 Carey's theory rests on a single factual

allegation: that Perrino told Carey not to mention Darling in

his initial debriefing. Carey argues that an actual conflict

is "clear" because his best interests required "telling the

government everything he knew about anybody or anyone,

including Joseph Darling, at the outset" and, further, that

defense counsel could have offered to have Carey testify

against Darling. We think that the single fact of Perrino's

statement is insufficient to establish that the counselled

course of action was either "inherently in conflict or not

undertaken due to" Perrino's other loyalties. Id. In fact, 

Carey's best interests could have dictated precisely the

course suggested by Perrino. For example, inasmuch as state

authorities already knew of Darling's activities, any proffer

by Carey would be unlikely to impress his debriefers but

could potentially antagonize Darling into divulging more

about Carey. Furthermore, because both Carey and Darling

were involved in the post-appearance growing operation, it

might well have been in Carey's interest to have heeded

Perrino's advice. To be sure, all this is speculation, but

 -10- 10

so is Carey's conclusory suggestion that Perrino breached his

duty of loyalty. Carey must show more. In actual-conflict

cases, we have repeatedly stated that the defendant must

demonstrate that the alleged conflict is more than "some

attenuated hypothesis having little consequence to the

adequacy of representation." Brien v. United States, 695 

F.2d 10, 15 (1st Cir. 1982) (citing United States v. 

Martorano, 620 F.2d 912, 916 (1st Cir. 1980)). Even when 

accepted as true and read in its most friendly light, the

single factual allegation offered by Carey does not surpass

this hurdle. Accordingly, because no actual conflict of

interest existed, we conclude that prejudice cannot be

legally presumed. 

 One step remains in our analysis. Assuming that

Perrino's advice fell short of Strickland's first prong, we 

still must determine whether prejudice in fact resulted. We

conclude that it did not. To establish prejudice, a

defendant must demonstrate that there was a reasonable

probability that, but for counsel's errors, the result in the

proceeding would have been different. Strickland, 466 U.S. 

at 694. Prejudice incorporates more than outcome

determination; we also must determine whether "the result of

the proceeding was fundamentally unfair or unreliable."

Lockhart v. Fretwell, 113 S. Ct. 838, 842 (1993); see also 

Scarpa v. Dubois, 38 F.3d 1, 12 (1st Cir. 1994), cert. 

 -11- 11

denied, 115 S. Ct. 940 (1995). We conclude that absent 

Perrino's statement, the outcome in this case would be no

different. By its terms, section 5K1.1 vests in the

government full discretion to file a substantial-assistance

motion, subject to review only if the refusal to file was

based on an unconstitutional motive.3 Wade v. United 

States, 112 S. Ct. 1840, 1843-44 (1992). The record allows 

us to conclude with near certainty that, even if Carey had

discussed Darling at the initial debriefing, any information

about Darling would not have changed the government's

ultimate determination that Carey's assistance was "not

significant." At least three facts support this conclusion.

First, at the time of the initial debriefing, state

authorities already knew that Darling was involved with

drugs. Second, although Carey did freely discuss Darling at

his second debriefing, the government was apparently

unimpressed with whatever information Carey provided. Third,

in its response to Carey's objections to the magistrate's

report, the government makes clear that if Carey were ordered

to be resentenced, it would not move for a downward departure

because, at that point, "substantial assistance [could not]

be rendered and [could] never be rendered." 

  

3. Carey did not enter into an agreement under which the
government would be bound to seek a downward departure.

 -12- 12

 Finally, upon careful review of the record, we

detect no evidence even arguably suggesting that Carey's

sentencing was either unfair or unreliable. Accordingly, we

conclude that Carey suffered no prejudice and, thus, his

ineffective-assistance-of-counsel claim fails.

 CONCLUSION CONCLUSION 

 For the foregoing reasons, the decision of the

district court is

 affirmed. affirmed. 

 Dissent follows. 

 -13- 13

 BOWNES, Senior Circuit Judge, dissenting in part: BOWNES, Senior Circuit Judge, 

I fully agree that there was no error in the failure to hold

an evidentiary hearing on Carey's claim that the

voluntariness of his plea was compromised by his ingestion of

prescription medications prior to the change of plea hearing.

I disagree, however, that the district court permissibly

rejected Carey's conflict of interest claim without an

evidentiary hearing. For this reason, I respectfully dissent

from Part B of the majority opinion.

 I. I. 

 At the outset, I think it important to state some

bedrock legal tenets. First, "the right to counsel is the

right to effective assistance of counsel." McMann v. 

Richardson, 397 U.S. 759, 771 n.14 (1970). Second, the right 

to effective assistance of counsel is always denied where an 

actual conflict of interest negatively affects a lawyer's

performance. See Cuyler v. Sullivan, 446 U.S. 335, 345-50 

(1980). In other words, an actual conflict of interest is a

special breed of ineffective assistance which is never

harmless and is presumptively prejudicial. Id. at 349-50. 

And third, the right to effective assistance of counsel

applies at the sentencing stage of a felony case. See Mempa 

v. Rhay, 389 U.S. 128, 134 (1967).  

 I recognize that the standard by which

effectiveness ordinarily is judged may be more lax at the 

 -14- 14

sentencing stage of a noncapital case than it is at trial.

Cf. Strickland v. Washington, 466 U.S. 668, 686 (1984) 

(leaving open the question whether Strickland's effectiveness 

definition should apply to counsel's performance at "an

ordinary sentencing, which may involve informal proceedings

and standardless discretion in the sentencer, and hence may

require a different approach to the definition of

constitutionally effective assistance").4 There can be no

doubt, however, that a lawyer whose performance at sentencing

was compromised by an actual conflict of interest has not

rendered the client the effective assistance of counsel

mandated by the Constitution. See United States v. Swartz, 

975 F.2d 1042, 1048 (4th Cir. 1992) (applying Cuyler at the 

sentencing stage); United States v. Ziegenhagen, 890 F.2d 

937, 939-41 (7th Cir. 1989) (same); see also United States v. 

Green, 680 F.2d 183, 191-205 (D.C. Cir. 1982) (Bazelon, J., 

dissenting), cert. denied, 459 U.S. 1210 (1983). 

 II. II. 

 In light of the foregoing authority, it is clear

that the appropriate inquiry here simply is whether Carey's

  

4. Strickland, of course, predated the Sentencing 
Guidelines. Federal sentencing proceedings today can hardly
be described, in the words of Strickland, as either 
"informal" or as governed by a sentencer with "standardless
discretion." 466 U.S. at 686. 
 It must also be noted that despite the above-quoted
dictum, we have applied the Strickland effectiveness standard 
at sentencing. See Carsetti v. Maine, 932 F.2d 1007, 1012-14 
(1st Cir. 1991).

 -15- 15

allegation is sufficient to state a claim that his lawyer had 

an actual conflict of interest. As the majority concedes,

under 28 U.S.C. 2255, a petitioner is entitled to an

evidentiary hearing "[u]nless the motion and the files and

records of the case conclusively show that the prisoner is

entitled to no relief . . . ." Thus, a petition can be

dismissed without a hearing only if the petitioner's 

allegations, if credited, would not entitle the petitioner to 

relief, or "if the allegations cannot be accepted as true

because they are contradicted by the record, inherently

incredible, or conclusions rather than statements of fact."

United States v. Rodriguez Rodriguez, 929 F.2d 747, 751 (1st 

Cir. 1991); see also Dziurgot, v. Luther, 897 F.2d 1222, 1225 

(1st Cir. 1990); Mack v. United States, 635 F.2d 20, 26-27 

(1st Cir. 1980). 

 Here, Carey's allegation that his lawyer told him

not to tell the government about Darling is not contradicted

by the record, inherently incredible, conclusory, or

unremediable. Moreover, if true, it might well be sufficient

to satisfy the two-pronged test for establishing an actual

conflict of interest: (1) that counsel "actively represented

conflicting interests"; and (2) that "an actual conflict of

interest adversely affected his lawyer's performance." See 

 -16- 16

Cuyler, 446 U.S. at 349-50.5 The majority speculates that 

"Carey's best interests could have dictated precisely the 

course suggested by Perrino." See opinion at 9 (emphasis 

supplied). Perhaps, but we cannot know without an

evidentiary hearing at which Perrino could either deny the

allegation or explain his action. After all, the inference

that Carey would have us draw from his petition -- that

Perrino's advice was motivated by loyalty to Darling and

could well have harmed him at sentencing -- is just as

plausible as the majority's speculation. I think the law

required the district court to hold a hearing and to resolve

these questions. 

 III. III. 

 After concluding that Carey does not state an

actual conflict of counsel claim, the majority states that it

"still must determine whether prejudice in fact resulted."

See opinion at 10. It does not need to engage, and should 

not have engaged, in this analysis. If, on the one hand,

Carey's allegation is insufficient to state an actual

conflict claim (as the majority holds), there is no viable

  

5. It should be borne in mind that Cuyler's "adversity" 
requirement is not tantamount to a showing of harm or 
prejudice; Cuyler makes very clear that a defendant 
victimized by a lawyer with dual loyalties need not show harm
or prejudice. Cuyler, 446 U.S. at 349-50. For this reason, 
adversity must be construed as any action taken by a lawyer
which was prompted by the lawyer's loyalty to some other
partyand which was not in the complaining client's interest. 

 -17- 17

claim of ineffective assistance of counsel, and the prejudice

analysis is entirely superfluous. If, on the other, Carey's

allegation is sufficient to state an actual conflict claim

(as I maintain), the prejudice analysis is patently improper.

The majority in Cuyler could not have been clearer: "[A] 

defendant who shows that a conflict of interest actually

affected the adequacy of his representation need not

demonstrate prejudice in order to obtain relief." 446 U.S.

at 349-50.

 IV. IV. 

 Even were I to ignore Cuyler and deem Carey's claim 

as being properly subject to a prejudice analysis, I could

not agree that there was no prejudice here. Hoisting Carey

by the petard of an assertion Cuyler did not require him to 

make, the majority confines its prejudice inquiry to the harm

emphasized by Carey in his motion (that his failure to talk

about Darling at the initial debriefing resulted in the

absence of a 5K1.1 motion at his sentencing) and determines

"with near certainty that, even if Carey had discussed

Darling at the initial debriefing, any information about

Darling would not have changed the government's ultimate

determination that Carey's assistance was `not significant.'"

See opinion at 11.  

 I have two problems with this determination.

First, I am loath to decide what the government would or

 -18- 18

would not have done in this case without sworn testimony

tested by adversarial questioning. And more importantly,

even if I could conclude that Carey would not have received a

 5K1.1 motion at his initial sentencing, I cannot say that

Carey was not harmed in some other way if his lawyer was

disloyal. In this vein, I point out that Carey could come

out of a second sentencing with a lower sentence than the one

he currently is serving. Carey's guideline range was 97-121

months, and he received a sentence of 109 months. Thus,

regardless of whether there was a 5K1.1 motion, if the

district court found that Carey had received ineffective

assistance of counsel in connection with his first

sentencing, it would in no way be engaging in an empty

exercise by setting Carey's sentence aside and ordering a

second sentencing hearing. It is not at all far-fetched to

assume that a lawyer completely loyal to Carey might be able

to persuade the judge to sentence him at the lower end of the

appropriate guideline range.

 The majority concludes its prejudice analysis by

stating that it does not "detect any evidence even arguably

suggesting that Carey's sentencing was either unfair or

unreliable." Id. at 11. While I don't disagree with this 

statement, I hardly find it surprising; there was no

evidentiary hearing at which such evidence might have been

developed. That is the main point of my dissent.

 -19- 19

 V. V. 

 Binding Supreme Court and Circuit precedent

prohibited the district court from rejecting Carey's conflict

of interest claim without an evidentiary hearing. I

therefore dissent from Part B of the majority opinion, which

affirms the denial of Carey's claim without a hearing.

 -20- 20