106 F.3d 383
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES of America, Appellee,
v.
Camille BELLE, Defendant, Appellant.
 No. 95-2182.
 United States Court of Appeals, First Circuit.
 Jan. 24, 1997.
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge]
 Chris H. Mangos for appellant.
 Camille Belle on supplemental brief pro se.
 Geoffrey E. Hobart, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief for appellee.
 Before STAHL, Circuit Judge, ALDRICH and CAMPBELL, Senior Circuit Judges.
 ALDRICH, Senior Circuit Judge.
 
 
 1
 The record in this case calls for our writing something of a primer on acceptance-of-plea hearings. First, the background. Camille Belle (Belle), together with her husband and son, were arrested on a criminal complaint in February 1994. By a superseding indictment in June 1994 she was charged, inter alia, with various drug offenses, including conspiracy from 1987 to the date of arrest. In January 1995 she retained new counsel, and her (separate) trial date was set for May 22. On the morning of that day Belle told the court she wished to plead. A plea agreement was drawn, and, after a hearing, her plea to six of the eight counts of the indictment was accepted.
 
 
 2
 On September 7, 1995 a Presentence Report (PSR) was released, with objections due by September 21. On September 19, supported by a one page affidavit of counsel, Belle moved for leave to vacate her plea, and for a competency evaluation. These motions were denied the following day. Thereafter she filed objections to the PSR. A sentencing hearing was held on September 28. After, in a two hour address, Belle had informed the court of her views as to how the agents had treated her during the "reverse sting" operations that had led to her indictment, she was sentenced to a minimum-mandatory term of ten years. She appeals.
 
 
 3
 Belle's primary complaint is that her Rule 11 plea hearing was inadequate. Of present relevance the following occurred (numerals ours).
 
 
 4
 THE COURT: Are you presently under a doctor's care?
 
 
 5
 BELLE: Yes, your Honor.
 
 
 6
 THE COURT: What did she say?
 
 
 7
 THE CLERK: Yes, your Honor.
 
 
 8
 THE COURT: Does the illness that you're being treated for affect your ability to understand the nature of these proceedings?
 
 
 9
 BELLE: No.
 
 
 10
 THE COURT: Have you taken any medicine or pills or drugs today?
 
 
 11
 BELLE: Yes, your Honor.
 
 
 12
 THE COURT: Is the ingestion of any of those items, medicines or pills or drugs, does it affect your ability to understand the nature of these proceedings?
 
 
 13
 BELLE: No.
 
 
 14
 THE COURT: Have you ever been under psychiatric care?
 
 
 15
 BELLE: No, your Honor.
 
 
 16
 THE COURT: Counsel, do you know any reason why the Court should not accept the plea of guilty?
 
 
 17
 MR. BALLIRO: I do not, your Honor.
 
 
 18
 THE COURT: Have you had sufficient time to discuss this matter fully with your attorney?
 
 
 19
 BELLE: Yes.
 
 
 20
 THE COURT: Are you satisfied with his representation of you?
 
 
 21
 BELLE: Yes.
 
 
 22
 After this exchange, the court found that "the plea of guilty has been knowledgeably offered with an understanding of its possible consequences."
 
 
 23
 In United States v. Parra-Ibanez, 936 F.2d 588, 594-95 (1st Cir.1991), after recognizing that the voluntariness of the plea is a core requirement of Fed.R.Crim.P. 11, we quoted with approval from United States v. Cole, 813 F.2d 43, 46 (3d Cir.1987) that once the court "has been informed that the defendant has recently ingested drugs or other substances capable of impairing his ability to make a knowing and intelligent waiver of his constitutional rights," this subject must be pursued. We repeated this admonishment in Carey v. United States, 50 F.2d 1097, 1099 (1st Cir.1995). Even without these authorities this would seem manifest.
 
 
 24
 We cannot understand how, having been informed by the affirmative answer to question 4, that Belle may have just ingested drugs, the court would not have asked the obvious. Her opinion, 5, and that of her counsel, 7, to the effect that some, unidentified, substance had not interfered with her mental abilities, was, at best, secondary evidence. It is not to be forgotten that defendant and counsel are concerned parties who want the plea accepted. Their views are important, and we certainly do not, at least initially, (see post ), question the good faith or general ability of counsel, but the purpose of a plea hearing is to obtain impartial findings upon available basic facts. We are not persuaded by a discomforted government's argument that these opinions excused the court "from engaging Belle in an extended colloquy about her various ailments." Rather, the court's inquiry was conspicuously deficient.
 
 
 25
 This conclusion may not of itself warrant the withdrawal of the plea. Apart from the red flag answer to question 4 the record as a whole fully warranted the court's conclusion that the plea was voluntary. Can we then conclude from the record as a whole that this error was harmless (e.g., the PSR)? See Carey, 50 F.3d at 1099. Here, however, we run into a singular situation. According to Belle's counsel, on May 22 when her plea was accepted (and after his being with her for some time), there was no reason why her plea should not be accepted. (Question 7). According to this same counsel, by his September affidavit in support of her motion to withdraw her plea, on May 22 she was "confused, disoriented and lacking in comprehension as to the effect of her agreement to plead guilty."
 
 
 26
 While this affidavit may raise serious questions as to counsel, it surely weakens the reliability of his statement to the court as to defendant's state of mind on May 22. This, together with the court's failure to ask the obvious question after 4, prevents us from determining that the Rule 11 error was harmless.
 
 
 27
 As we did in Parra-Ibanez, 936 F.2d at 598, we remand to the district court for an evidentiary hearing, its findings and recommendations to be forwarded to the clerk of this court. This hearing should include findings on the companion matters sought to be raised before us, ante. Our jurisdiction to continue.