Jesús **MIRANDA–GONZÁLEZ,**
**Petitioner, Appellant,**

v.

**UNITED STATES, Respondent,**
**Appellee.**

No. 97–1200.

United States Court of Appeals,
First Circuit.

Heard April 8, 1999.

Decided June 28, 1999.

Rafael F. Castro–Lang, for appellant.

Warren Vázquez, with whom Guillermo Gil, United States Attorney, Jorge E. Vega–Pacheco, Assistant United States Attorney, and Camille Vélez–Rivé, Assistant United States Attorney, were on brief for appellee.

Before BOUDIN, Circuit Judge, BOWNES, Senior Circuit Judge, and LYNCH, Circuit Judge.

BOWNES, Senior Circuit Judge.

On April 5, 1993, Jesús Miranda–González ("Miranda") pleaded guilty to one count of distributing cocaine in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Miranda to a prison term of thirty-three months, followed by three years of supervised release, and a $5,000 fine.

Miranda subsequently filed a *pro se* motion seeking to vacate his plea under 28 U.S.C. § 2255, which was later supplemented with a more detailed memorandum of law once he retained counsel. In these documents, Miranda maintained, *inter alia*, that he did not voluntarily and intelligently plead guilty because he was under the influence of certain prescription drugs at the time. In the alternative, he argued that his answers during the plea colloquy were so incoherent that they should have alerted the judge to postpone the plea and order a psychiatric evaluation.

The motion was referred to a magistrate judge, who, after conducting an extensive hearing, recommended that it be denied. The district court adopted the magistrate's findings and recommendations in their entirety and refused to grant the motion, ruling that Miranda had knowingly and intelligently entered his guilty plea. This appeal followed.

█ Because entering a guilty plea is a solemn act involving the waiver of several constitutional rights, principles of due process require that a plea "amount to a voluntary and 'intentional relinquishment or abandonment of a known right or privilege.'" *United States v. Cotal–Crespo*, 47 F.3d 1, 4 (1st Cir.1995) (citation omitted). Rule 11 of the Federal Rules of Criminal Procedure sets forth a detailed procedure for accepting a guilty plea to ensure that a defendant who pleads guilty does so with "an understanding of the nature of the charge and the consequences of his plea." *Id.* (quoting *McCarthy v. United States*, 394 U.S. 459, 467, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)).

██ A defendant who pleads guilty to an offense and later attempts to wipe the slate clean bears a heavy burden, for he "possesses no absolute right to retract his plea." *United States v. Pellerito*, 878 F.2d 1535, 1537 (1st Cir.1989). A guilty plea will not be set aside where a defendant has had a change of heart simply because he now believes the case against him has become weaker or because he is not satisfied with the sentence he has received. When, as now, a defendant wishes to have his plea declared invalid due to his use of prescription medication or illicit drugs, "[t]he mere fact that [he] took potentially mood-altering medication is not sufficient to vitiate his plea." *Id.* at 1542. Rather, he must show "that the medication affected his rationality." *Id.* We review *de novo* the district court's legal conclusions in de-

nying the § 2255 motion, and we defer to any findings of fact unless clearly erroneous.

In *United States v. Parra–Ibanez*, 936 F.2d 588 (1st Cir.1991), we imposed on district judges a duty to conduct a more searching inquiry into the contemporaneous effects of medication on a defendant's ability to render a knowing and intelligent plea when they are alerted to the fact that a defendant has recently ingested drugs. *Accord United States v. Cole*, 813 F.2d 43, 46–47 (3d Cir.1987). Confronted with a situation in which the district court ignored obvious signs of a possible mind-altering influence, we remanded the case for further factfinding by the district court as to the chemical properties of the medication and the defendant's particular medicinal regimen. *See* 936 F.2d at 598. Arguing that his guilty plea is similarly suspect, Miranda seeks to shoehorn his situation into our holding in *Parra–Ibanez*. But try as he might, it does not fit.

█ Unlike in *Parra–Ibanez*, once put on notice that Miranda had been taking Xanax and Ativan, the court here conducted an extended colloquy to ascertain Miranda's reasons for taking the medications, the frequency with which he took them, the dosage of each, and the effects of the drugs on his cognitive functions during the change of plea hearing:

THE COURT: Have you taken any medicine, pills, drugs or alcoholic beverages in the past 24 hours?

THE DEFENDANT: Yes. I'm taking Xanax and Ativan.

THE COURT: What's that for?

THE DEFENDANT: For my nerves so I can relax.

THE COURT: Now, when was the last time that you have these pills?

THE DEFENDANT: I take them in the morning and in the evening.

THE COURT: So last night you took these pills?

THE DEFENDANT: Yes, this morning.

THE COURT: And this morning?

THE DEFENDANT: And this morning.

THE COURT: Now, this Ativan and Xanax, with "X", Xanax, that's an anthiolithic [sic], that is, to sort of calm your nerves, isn't it?

THE DEFENDANT: Yes.

THE COURT: And does that in any way cloud[ ] your thinking or put[ ] you drowsy or make[ ] you drowsy or in any way impair your mental process?

THE DEFENDANT: Sometimes I have blackouts.

THE COURT: But now let me—let's talk about now, today, now. You took those pills this morning, and my question to you is whether those pills have in any way affected your capability or ability to understand today's proceedings.

THE DEFENDANT: No.

THE COURT: They don't affect you? You have to voice your answer.

THE DEFENDANT: No, no, no.

Following this inquiry, the court then asked several questions of Miranda to probe his comprehension of the crime with which he was charged and the specific purpose of that day's proceedings. Miranda briefly consulted with counsel and answered that he was present to change his plea to guilty "for the sale of an eighth . . . [o]f cocaine."

We believe that the judge faithfully conducted the requisite *Parra–Ibanez* inquiry and was satisfied that in his medicated state Miranda fully understood the nature of the hearing and the gravity of his decision to plead guilty. The record amply supports that determination.

The cases cited by Miranda do not compel a contrary result. The absolute failure to investigate further once apprised of the recent ingestion of drugs doomed the plea entered by the defendants in *Parra–Ibanez* and *Cole*, while the judge here properly asked probing follow-up questions.

*Manley v. United States,* 396 F.2d 699 (5th Cir.1968), similarly offers Miranda no solace. In *Manley,* the Fifth Circuit invalidated a defendant's plea where he was given two injections of narcotics immediately before tendering his plea. Because the defendant had difficulty communicating with his own lawyer and the government misrepresented the nature of the injections to the district court, the court of appeals found itself unable to say with any measure of certainty that the medication did not impair his judgment in deciding to plead guilty. *See* 396 F.2d at 701.

Ours is a different situation altogether. The district court spent considerable time delving into the details surrounding the defendant's use of the medicine during the actual plea hearing; the magistrate judge later allowed Miranda to further develop the record during the habeas hearing. Miranda does not contend that either judge misapprehended the risks of the medications or was misinformed about their effects. On the whole, the determination that Miranda was of sound mind when he pleaded guilty to trafficking in cocaine was based on reliable evidence.

■ Finally, Miranda has a fallback position: he insists that his answers during the plea colloquy showed that he was so incoherent that the court should have postponed the proceedings *sua sponte* and ordered a psychiatric review. We disagree. From our review of the transcript, Miranda's responses did not reflect a patent lack of lucidity. To the contrary, we discern nothing that would have warranted a departure from the scheduled proceedings. Despite having taken prescription medication that morning, Miranda signaled that he understood the purpose of the hearing; he was able to communicate with his lawyer; and he spoke clearly and responsively in answering the judge's inquiries. Although he said that he sometimes had difficulty concentrating and occasionally had what he called "blackouts" while on his medication, he acknowledged that he was experiencing no problems during the plea

hearing. As his own expert later attested, he was taking only mild tranquilizer twice a day to control his bouts of anxiety. Our conclusion is bolstered by the record of the hearing held by the magistrate judge on the § 2255 motion, which established, among other things, that there existed no reason to believe that Miranda was experiencing psychosis or that he suffered from any serious mental illness at the time of the change of plea hearing. While we can envision a set of circumstances under which a colloquy might give rise to further concerns about a defendant's capacity to fully comprehend his actions, the exhaustive on-the-record discussion here provided no warning flags warranting more drastic action.

We note, moreover, that the district court took great pains to ensure fairness, asking both the prosecutor and defense counsel whether either had any doubts as to Miranda's competence to enter the guilty plea, in light of the disclosures concerning his medication and recent psychiatric history. Neither voiced an objection. Under the circumstances, the judge did all that was required of him.

For the reasons set forth above, we ***affirm*** the district court's denial of Miranda's § 2255 motion.