# United States Court of Appeals
## For the First Circuit

No. 99-2053

UNITED STATES OF AMERICA,

Appellee,

v.

JUAN SAVINON-ACOSTA,
a/k/a Sachi,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Honorable Mary M. Lisi, U.S. District Judge]

Before

Boudin, Circuit Judge

Cyr, Senior Circuit Judge,

and Lipez, Circuit Judge.

Juan Savinon-Acosta on brief pro se.
Juan Ortiz-Lebron, by appointment of the court, for appellant.
Donald C. Lockhart, Assistant United States Attorney, with whom Margaret E. Curran, United States Attorney, and Zechariah Chafee, Assistant United States Attorney, were on brief for the United States.

November 21, 2000

BOUDIN, Circuit Judge. This appeal concerns the validity of a guilty plea challenged for the first time on appeal. On March 24, 1999, Juan Savinon-Acosta, the defendant-appellant in this case, was indicted, along with co-defendant Miguel Piantini, for drug dealing. Both defendants were charged, in two counts, with possessing cocaine with intent to distribute it, 21 U.S.C. § 841(a)(1) (1994), and with conspiracy to distribute cocaine, id. § 846. The background events out of which the indictment arose are virtually undisputed.

In February 1999, Savinon-Acosta agreed to supply five kilograms of cocaine to two men who were, unbeknownst to him, informants for the Drug Enforcement Administration ("DEA"). Later in February, Savinon-Acosta held a meeting with the informants to fix the delivery date and then had a further telephone conversation with them during which Savinon-Acosta raised the price. In early March 1999, the informants spoke by telephone both with Savinon-Acosta and with Savinon-Acosta's supplier, Miguel Piantini, and fixed delivery for the next day, March 3.

On March 3, 1999, Savinon-Acosta, accompanied by Piantini and the latter's brother, drove to a restaurant in Pawtucket, Rhode Island, and met with the informants. Piantini offered the informants an additional five kilograms of cocaine.

-3-

Savinon-Acosta and the two Piantini brothers were then arrested, and the officers recovered ten kilograms of cocaine from the car used by the defendants. Savinon-Acosta later admitted that he had previously constructed a secret compartment in a car for Miguel Piantini.

On May 19, 1999, Savinon-Acosta agreed with the government to plead guilty to both counts of the indictment. The district court held a one-hour plea hearing that began at 11:30 a.m. on May 27, 1999. At the outset, the district court inquired whether Savinon-Acosta was under the influence of any drug. He answered that he had taken a prescription sleeping tranquilizer early that morning. In response to further questions he said that the medicine did not affect his ability to understand the proceedings, which he "underst[ood] perfectly," and that his "head [was] clear." The district court then had an extensive colloquy with Savinon-Acosta concerning the plea agreement, sentencing parameters, and the constitutional rights that Savinon-Acosta would forego by pleading guilty.

Following the colloquy, the prosecutor summarized the evidence that the government had available, consistent with the facts described above (but with more detail). Asked to comment on the prosecutor's summary of evidence, Savinon-Acosta replied,

-4-

"What the prosecutor said is correct, but there's a certain point I would like to make . . . ." The points on which Savinon-Acosta then elaborated were that he had been drawn into the deal by a cousin, that he thought that five kilograms rather than ten would be involved, that Miguel Piantini was the supplier, and that he (Savinon-Acosta) did not "have possession of" the cocaine and had never had the cocaine "in my hands."

These reservations prompted further questioning by the district judge. In response, Savinon-Acosta explicitly conceded that he and Miguel Piantini had an agreement with each other that they were going to sell the cocaine. He also said explicitly that he did not otherwise disagree with the prosecutor's statement. At the close of the plea hearing, the district court accepted Savinon-Acosta's guilty plea as voluntary.

On August 27, 1999, the district court held a sentencing hearing. Savinon-Acosta, through counsel, sought an adjustment in the guideline calculation on the ground that he had been only a minor participant. See U.S.S.G. § 3B1.2(b) (2000). He also sought a downward departure based on a litany of departure provisions. See U.S.S.G. §§ 5H1.3, 5H1.6, 5K2.0, 5K2.12, 5K2.13 (2000). The district court rejected these requests, explaining in detail its reasons for ruling that

-5-

Savinon-Acosta was not a minor participant and did not qualify for a downward departure on any of the grounds presented. The discussion covers about 20 pages of the sentencing hearing transcript.

At the close, the district court determined that the guideline range was 70 to 87 months incarceration, and the court sentenced Savinon-Acosta to 70 months on each count, the two sentences to run concurrently. The guideline calculation included a reduction of three levels for acceptance of responsibility, see U.S.S.G. § 3E1.1 (2000), and, in determining the sentence, the district court gave the defendant the benefit of the safety-valve provision to avoid imposing the ten-year mandatory minimum sentence that could otherwise have been applicable because of the quantity of cocaine involved, see 18 U.S.C. § 3553(f) (1994 & Supp. II 1996); U.S.S.G. §§ 2D1.1(b)(6), 5C1.2 (2000).

An appeal was filed on defendant's behalf, and, after new defense counsel was appointed, new counsel submitted an Anders brief. See Anders v. California, 386 U.S. 738, 744 (1967). The brief identified the minor-participant and downward-departure issues as matters that counsel had considered but found not to merit appellate review. At the court's request the government filed a responsive brief arguing that neither of

the sentencing claims had merit.  Shortly thereafter, Savinon-Acosta submitted a pro se brief addressed to the same two issues, asserting that the district court had erred on both issues.

During this period, this court on initial review of the appeal encountered the colloquy, already briefly described, in which defendant mentioned his ingestion of a prescribed tranquilizer drug on the day of the change of plea.  In light of this court's decision in United States v. Parra-Ibanez, 936 F.2d 588 (1st Cir. 1991), this court asked for and received briefs from Savinon-Acosta's appointed counsel and from the government addressing the question whether the plea had been voluntary.  Thereafter, we heard oral argument.

The sentencing claims which Savinon-Acosta has pressed pro se require little discussion.  The district court's finding that Savinon-Acosta was not a minor participant rested on a correct understanding of the law.  Findings of fact are subject to review only for clear error, but nothing the district court said about the facts appears to be error at all.  The district court's ultimate characterization of Savinon-Acosta as having played more than a minor role was eminently reasonable.

The district court's refusal to depart downward is also secure.  Under well-established precedent in this circuit,

refusals by the district court to depart, whether upward or downward, are unreviewable unless the district court has misunderstood its own legal authority. United States v. O'Connor, 28 F.3d 218, 222-23 (1st Cir. 1994). We cannot identify any statement of the district court suggesting that it misunderstood its legal authority to make downward departures. Accordingly, there was no error in the sentence.

The guilty plea colloquy relating to drug use raises an entirely different set of issues. As we recently suggested, merely technical failures to comply with Rule 11 are often found harmless, but a finding of harmlessness is less likely where an error affects a "core concern" of the rule. United States v. Gandia-Maysonet, 227 F.3d 1, 5-6 (1st Cir. 2000). Where the error was not called to the district court's attention, appellate review is governed by the plain error standard, which "requires not only an error affecting substantial rights but also a finding by the reviewing court that the error has 'seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings.'" Id. at 5 (quoting United States v. Olano, 507 U.S. 725, 732 (1993)).

A guilty plea must, of course, be "voluntary." See Fed. R. Crim. P. 11(d). That the plea be voluntary is not only a requirement of due process, McCarthy v. United States, 394

U.S. 459, 466 (1969), but a premise of the defendant's meaningful participation in the plea process. Common sense, backed by ample case law, suggests that medication can in some circumstances affect a defendant's mental state to a degree that undermines the defendant's ability to enter a voluntary plea.

Accordingly, when the defendant at a Rule 11 proceeding confirms that he is taking medication, the district court has a duty to inquire into the defendant's capacity to enter a guilty plea. See Miranda-Gonzalez v. United States, 181 F.3d 164, 166 (1st Cir. 1999); Parra-Ibanez, 936 F.2d at 595-96. The better practice would be to identify which drugs a defendant is taking, how recently they have been taken and in what quantity, and (so far as possible) the purpose and consequences of the drugs in question. The critical question is whether the drugs--if they have a capacity to impair the defendant's ability to plead--have in fact done so on this occasion. Miranda-Gonzalez, 181 F.3d at 166.

Judges are not pharmacists or doctors. Occasionally the aid of an expert may be necessary to explain the likely or actual effects of a particular drug. However, practical judgments can usually be made. Courts have commonly relied on the defendant's own assurance (and assurances from counsel) that the defendant's mind is clear. E.g., Miranda-Gonzalez, 181 F.3d

at 166-67; <u>United States</u> v. <u>Vaughan</u>, 13 F.3d 1186, 1187 (8th Cir.), <u>cert.</u> <u>denied</u>, 511 U.S. 1094 (1994). Further, the defendant's own performance in the course of a colloquy may confirm, or occasionally undermine, his assurances. <u>Miranda-Gonzalez</u>, 181 F.3d at 167; <u>Vaughan</u>, 13 F.3d at 1187. Conversely, a defendant's prior medical history or behavior may call for heightened vigilance. <u>Parra-Ibanez</u>, 936 F.2d at 591, 595-96.

In this instance, we would have been more comfortable if the district court had been able to ascertain the name of the tranquilizer and the quantity, but the district court did <u>ask</u> for the name of the medicine and Savinon-Acosta said he did not know. On the other hand, the court did determine the purpose of the medicine and then asked specifically, "Does that medicine in any way affect your ability to understand the conversation we're having this morning?" Savinon-Acosta answered, "No. No. I understand perfectly." Furthermore, when the district court then rephrased the question to ask Savinon-Acosta whether his "head [was] clear this morning," Savinon-Acosta replied, "Yes, ma'am."

The district court then conducted an extensive colloquy which bore out the defendant's claim of clearheadedness. At different points the court asked Savinon-Acosta to explain what

he understood to be the meaning of what the court had just said or for his own version of events; and in each case Savinon-Acosta responded coherently. Even when only yes or no answers were required, Savinon-Acosta frequently offered more elaborate responses, similarly coherent. And at no point prior to the time that this court raised the issue did Savinon-Acosta or his attorney ever suggest that there was any doubt about his ability to enter the plea.

Under these circumstances, we are satisfied that there was no error in accepting the plea, let alone the sort of miscarriage of justice that would meet the plain error standard. At first blush, the inquiries made in this case may not look too different from those in Parra-Ibanez, 936 F.2d at 591-92, where we remanded for further findings as to the effect of the medicine; but there the defendant had, prior to the plea, revealed a history of psychiatric treatment and drug abuse sufficient to justify a psychiatric evaluation for competency, id. at 591. Moreover, after the plea, there was additional concrete evidence of serious emotional disturbance, including the defendant's attempted suicide and his affliction with seizures. Id. at 592. By contrast, in Miranda-Gonzalez, inquiries not dissimilar to those made in this case were regarded as sufficient. 181 F.3d at 166.

The rhetoric in the circuit courts is not uniform even within circuits, but there is certainly no settled rule that a hearing cannot proceed unless precise names and quantities of drugs have been identified.  On the contrary, in general terms our own case is not unlike United States v. Dalman, 994 F.2d 537, 538-39 (8th Cir. 1993), where the defendant was unable to tell the district court the names of the drugs he was taking but confirmed that he understood what was happening; and his performance in the colloquy bore out his assertion.  The circuit court upheld the plea, as we do here.

Affirmed.