# United States Court of Appeals
## For the First Circuit

No. 99-1631

UNITED STATES,

Appellee,

v.

MARIO SAAVEDRA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Torruella, Chief Judge,

Coffin and Campbell, Senior Circuit Judges.

George F. Gormley for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, with
whom Guillermo Gil, United States Attorney, and Jorge E. Vega-
Pacheco, Assistant United States Attorney, Chief, Criminal
Division, were on brief for appellee.

May 22, 2001

**CAMPBELL, <u>Senior Circuit Judge</u>.** Defendant Mario Saavedra's five-day jury trial ended with a verdict of guilty on all three of the following counts:  (1) conspiring to possess with intent to distribute multi-kilogram quantities of cocaine on board a vessel subject to United States jurisdiction in violation of 46 U.S.C. § 1903; (2) conspiring to import cocaine into the United States from a place outside thereof in violation of 21 U.S.C. § 963; and (3) attempting to import cocaine into the United States, also in violation of 21 U.S.C. § 963. Saavedra was sentenced on each count to 324 months in prison, the sentences to run concurrently.  He appeals, asserting various errors by the district court.  We affirm.

**I.**

The drug conspiracy at issue involved the transportation of cocaine aboard the M/V DAYBREAK, a vessel registered in the state of Florida.  After many false starts (due to mechanical troubles, missed contacts and customs difficulties in different ports of call), the vessel finally stalled completely on July 26, 1994, off the coast of Puerto Rico.  The crew (which did not include the defendant, who was not on board) was rescued by the United States Coast Guard.  The Coast Guard found over 297 kilos of cocaine on the M/V DAYBREAK

and arrested its crew of three.  These crew members eventually cooperated with the government, naming Maria Saavedra and a man named Christopher Munoz as the leaders in the drug smuggling operation.  An indictment issued against both Saavedra and Munoz on November 15, 1995.[1]

Although not on board the DAYBREAK when the Coast Guard seized it, Saavedra did not dispute his participation in the drug smuggling operation.  He admitted helping Munoz with the logistics of the venture, primarily from his home in Santo Domingo in the Dominican Republic.  Saavedra's duties included looking after the vessel's mechanical systems and serving as liaison between the crew and Munoz.  Saavedra acknowledged a past history with the United States Drug Enforcement Agency ("DEA").  He had served time in federal prison in the late 1980s and early 1990s for drug smuggling (after which he was deported to his home in the Dominican Republic) and, prior to that, he had served as a paid informant for the DEA aiding in surveilling

---

[1] Saavedra and Munoz were tried separately, in part because Saavedra was not arraigned until 1997.  This is because as of January 11, 1996, Saavedra was incarcerated in the Netherlands awaiting trial on charges of cocaine importation, charges different from those at issue here. In spring of 1997, he was extradited to the United States, arrested and arraigned before the United States District Court for the District of Puerto Rico for the crimes described in the first paragraph of this opinion.

and curtailing drug smuggling operations into the United States through Central and South America.

Saavedra's chief defense at trial was that based on assurances from Munoz, he thought that he and Munoz were participating in the drug venture in order once again to aid the DEA -- in particular a DEA agent named Kazerowsky -- in the investigation of drug smuggling operations into the United States. Saavedra testified that Munoz had spoken with Agent Kazerowsky and that Munoz had instructed Saavedra that when the M/V DAYBREAK arrived in Puerto Rico, he was to inform Agent Kazerowsky that the vessel was carrying about 270 kilos of cocaine in cargo. Allegedly, Agent Kazerowsky would "take it from there."

By convicting Saavedra, the jury indicated that it was unimpressed with his defense that he thought he was working undercover for the DEA. Substantial evidence at trial provided an ample basis for the jury's non-acceptance of Saavedra's contention along these lines. Agent Kazerowsky testified that he had not been involved with Saavedra and Munoz in the instant smuggling venture.[2] Another DEA agent testified that when

---

[2] It was nevertheless undisputed that prior to Saavedra's incarceration for drug smuggling in the late 1980s, Agent Kazerowsky had worked with and paid Saavedra and Munoz as informants in other drug smuggling operations. After being released from prison in 1991 and deported to the Dominican

-5-

Saavedra was first detained in Puerto Rico after his extradition, he said nothing about a DEA investigation and claimed only to be helping Munoz fix the boat. Also, Saavedra admitted at trial that "this time" he was not being paid by the DEA for his purported informant role. He further admitted that the Munoz team of which he was a member was to retain the proceeds from the sale of 15-20 kilos of the cocaine -- the difference between the amount allegedly to be disgorged to the DEA and the total amount actually on board the M/V DAYBREAK.

Given the jury's adverse resolution of this factual issue, Saavedra's claim to have been aiding the DEA cannot serve as an effective ground for challenging his conviction on appeal. Accordingly, Saavedra now argues that the government failed to prove a supposedly essential element of the first count of the indictment, namely, that Saavedra knew the M/V DAYBREAK to be a "vessel of the United States" or otherwise "subject to the jurisdiction of the United States." 46 U.S.C. § 1903(a). Saavedra also argues that the court's jury instructions were, in context, prejudicially confusing as between the crimes of conspiring to import and attempting to import cocaine (Counts II and III) and the crime of conspiring to possess with intent to

Republic, as far as Kazerowsky knew, Saavedra had no further contact with the DEA.

-6-

distribute cocaine on board a vessel subject to United States jurisdiction (Count I).

## II.

Section 1903 of Title 46 of the United States Code, the substantive criminal statute allegedly violated by the conspiracy charged in the first count of the indictment, provides that "[i]t is unlawful for any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States, . . . to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance." 46 U.S.C. § 1903(a).[3] While conceding that the government's proof was "overwhelming" that the M/V DAYBREAK was a "vessel of the United States,"[4] Saavedra contends that the government erred

---

[3] Defendant was convicted under this statute pursuant to its subsection (j), which states that "[a]ny person who attempts or conspires to commit any offense defined in this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 46 U.S.C. § 1903(j).

[4] Among the bases for qualification as a "vessel of the United States" is documentation under chapter 121 of Title 46 or numbering as provided in chapter 123 of Title 46. See U.S.C. § 1903(b)(1). Chapter 123 of Title 46 provides for the numbering of vessels by states with identification systems approved by the United States Secretary of Transportation. See 46 U.S.C. § 12301-12309. It is undisputed that the M/V DAYBREAK was registered at relevant times in Florida, a state whose numbering

in failing to prove, as an additional element of the conspiracy, that he actually knew that the vessel was "of the United States" or otherwise subject to United States jurisdiction. Because no evidence was put before the jury of Saavedra's knowledge, he contends that the district court committed reversible error in not granting his motion for acquittal based on an insufficiency of the evidence to convict him of participating in a conspiracy to violate 46 U.S.C. § 1903.

In support of his contention that a conspirator's knowledge of United States jurisdiction over the vessel must be alleged and proven beyond a reasonable doubt, Saavedra points to the fact that in 1996, after his arrest, the substantive statute was amended to include the following statement: "Jurisdiction of the United States with respect to vessels subject to this chapter is not an element of any offense. All jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C. § 1903(f)(1996). Defendant argues that this statutory amendment shows that prior to 1996, the jurisdictional requirement was an element of the criminal offense the government had to prove to the jury beyond a reasonable doubt.

system is approved by the United States Secretary of Transportation. See 46 U.S.C. §§ 12101(b)(1), 12302; 33 C.F.R. 173, App. A.

-8-

But assuming this is so – that before 1996 it was for the jury to pass upon the jurisdiction of the United States with respect to the vessel and that this was an element of the crime – the statute neither then nor now expressly made defendant's <u>knowledge</u> that a vessel belonged to or was otherwise subject to the jurisdiction of the United States either an element of the crime or a jurisdictional prerequisite to conviction. <u>Cf.</u> <u>United States</u> v. <u>Guerrero</u>, 114 F.3d 332, 339 & n.9 (1st Cir. 1997) (stating that the first element of 46 U.S.C. § 1903(a), as it stood in 1995, "requires the government to prove that the [vessel] was 'a vessel subject to the jurisdiction of the United States'"); <u>United States</u> v. <u>Passos-Paternina</u>, 918 F.2d 979, 981 (1st Cir. 1990) (stating only that the jury determines the jurisdictional question under § 1903).[5]

---

[5] It is not uncommon for federal criminal statutes to contain jurisdictional prerequisites which do not require defendant's knowledge of their fulfillment in order to secure a conviction. <u>See</u>, <u>e.g.</u>, 18 U.S.C. § 922(g) (unlawful possession of a firearm, which requires proof that the firearm has been transported through interstate commerce). This court held in <u>United States</u> v. <u>Corey</u>, 207 F.3d 84, 88 (1st Cir. 2000), that the "interstate nexus" element required to convict under 922(g)(1) was met when the government demonstrated that defendant possessed the shotgun in a state other than the one in which it was manufactured, not that defendant had to know that the shotgun had in fact traveled in interstate commerce. <u>See also</u> <u>Scarborough</u> v. <u>United States</u>, 431 U.S. 563, 575 (1977) (concluding that section 922(g) requires only "the minimal nexus that the firearm have been, at some time, in interstate commerce"). The federal bank robbery statute, 18 U.S.C. § 2113 has a similar jurisdictional aspect, requiring the bank's

Not only is there no mention in § 1903 that a defendant must know of the vessel's nationality, but the wording of the statute suggests Congress's deliberate omission of any such requirement. The plain language of the statute proscribes being "on board a vessel of the United States or . . . subject to the jurisdiction of the United States[] . . . [and] . . . knowingly or intentionally manufactur[ing] or distribut[ing] or possess[ing] with intent to . . . distribute . . . a controlled substance." 46 U.S.C. § 1903(a)(1996)(emphasis added). The placement of the word "knowingly" before the acts of manufacturing, distributing and possessing and not before the phrase "on board a vessel of the United States or . . . subject to the jurisdiction of the United States" indicates that knowledge of United States jurisdiction over the vessel is not an additional element of the crime. See, e.g., Lopez-Soto v. Hawayek, 175 F.3d 170, 172 (1st Cir. 1999) ("We start our search for the meaning of the words that Congress wrote with an appraisal of the statutory text and structure, mindful that if

---

deposits be FDIC-insured. See 18 U.S.C. § 2113(f)(defining "bank" as used in the statute as "any institution the deposits of which are insured by the Federal Deposit Insurance Corporation"); United States v. Mojica-Baez, 229 F.3d 292, 299 (1st Cir. 2000)(stating that conviction under 18 U.S.C. § 2113 requires "the government to prove that the money taken during the robbery was insured by the FDIC," and not that the defendant knew it was so insured).

-10-

the plain language of the statute points unerringly in a single direction, an inquiring court ordinarily should look no further.") (citation omitted). Had Congress wanted to make defendant's knowledge of United States jurisdiction over the vessel an element of the crime, it could readily have inserted "knowingly" before "on board" as it did before "manufacture or distribute, or to possess." "Courts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language." United States v. Albertini, 472 U.S. 675, 680 (1985). "'[O]nly the most extraordinary showing of contrary intentions' in the legislative history will justify a departure from that language." Id. (quoting Garcia v. United States, 469 U.S. 70, 75 (1984)). No such showing has been made here.

We add that to require a knowing drug smuggler to also know whether his vessel is under United States jurisdiction would make the statute virtually unenforceable in some instances. A vessel may be "of the United States," or otherwise be subject to United States jurisdiction, for a variety of reasons, federal or qualifying state documentation being only two. For example, under 46 U.S.C. § 1903(c)(1)(E), a foreign nation's consent to United States jurisdiction over a vessel in the former's territorial waters may be "obtained by radio, telephone or similar oral or electronic means and is

-11-

conclusively proved by certification of the Secretary of State or the Secretary's designee." 46 U.S.C. § 1903(c)(1). A crew person aboard the drug smuggling vessel might well not know whether the nation-state in whose waters the vessel was operating had consented to the enforcement of United States law by the United States. See also 46 U.S.C. § 1903(b)(2)(D) (defining "vessel of the United States" as a "vessel owned in whole or in part by . . . a corporation created under the laws of the United States or any State . . . "); 46 U.S.C. § 1903(c)(1)(C) (defining "vessel subject to the jurisdiction of the United States" as "a vessel registered in a foreign nation where the flag nation has consented or waived objection to the enforcement of United States law by the United States"). A defendant's knowledge of one or another of the foregoing factors would, in many cases, be difficult if not impossible to prove.

We conclude that defendant's interpretation requiring a conspirator to have known that the M/V DAYBREAK was a "vessel of the United States" or was otherwise subject to the jurisdiction of the United States is incorrect, being both implausible and contrary to the plain language of 46 U.S.C. § 1903, which calls for no such knowledge. All the government had to prove jurisdictionally was that the United States did in fact

have jurisdiction over the vessel at issue.  This the government accomplished without any dispute, because, as noted earlier, see supra note 4, the evidence at trial was uncontradicted that the M/V DAYBREAK was registered in Florida, and was therefore a "vessel of the United States" as defined by 46 U.S.C. § 1903(b), hence within United States jurisdiction.  Defendant's conviction under Count I is affirmed.

### III.

Defendant's last two claims of error are equally lacking in merit.  Both concern the accuracy of the district court's jury instructions and neither was preserved below.  We therefore review for plain error.  See United States v. Savinon-Acosta, 232 F.3d 265, 268 (1st Cir. 2000).

Defendant complains that the district court's instructions to the jury were plainly erroneous in two ways. First, he contends that it was error not to instruct the jury that in order to convict it must find beyond a reasonable doubt that Saavedra knew that the vessel on board which he was conspiring to distribute cocaine was a vessel over which the United States had jurisdiction.  For reasons we have discussed above, there is no such requirement; defendant's contention on this score is simply incorrect.  Second, defendant contends that

-13-

the jury instructions on the crimes of importation (conspiring to import and to attempt to import cocaine, Counts II and III under 21 U.S.C. § 963) and the crime of conspiring to possess with intent to distribute cocaine on board a vessel subject to United States jurisdiction (Count I under 46 U.S.C. § 1903) were prejudicially confusing. On this theory, Saavedra contends that (1) had the jurors believed that he was working for the DEA, and (2) had they not been misled by the instructions that he contends insufficiently distinguished between the two crimes, he would have been acquitted of possession with intent to distribute all of the 297 kilos aboard the M/V DAYBREAK, leaving him responsible only for the importation of 15-20 kilos that he and his team planned to import and sell as compensation for their roles in the venture. This would have resulted in a much reduced sentence from the 324 months that he received for the 297 kilos of cocaine on all three counts.

The government admits that elements of Count I and Count II overlap (as they are both conspiracy charges). Nevertheless, the government argues, the district court's instructions on each of these charges were correct. Indeed, the defendant does not contest the accuracy of the instructions, only that in the peculiar circumstances of this case the overlap of elements and instructions thereon prejudiced his defense to

-14-

Count I (that he had authority to possess 270 kilos aboard the vessel as he was aiding the DEA in their investigations).  In other words, defendant claims that despite accurate instructions, by not treating the two conspiracies separately in the instructions to the jury, that is, serially, the district court confused the jury and allowed them to convict on conspiracy to possess with intent to distribute for Count I once they found a conspiracy to import for Count II.

The short answer to Saavedra's argument is that the court did not commit plain error simply because, in hindsight, instructions can be conceived that would have better served the defense's strategy.  The defense did not request instructions of the type it now says should have been given.  The instructions actually given here were adequate and correct.  Defendant falls far short of pointing to the commission of plain error.  See, e.g., United States v. Alicea, 205 F.3d 480, 484 (1st Cir. 2000) (stating that failing defendant's contemporaneous objection at trial to the district court's jury instructions, an appellate court reviews for plain error, a type of review that "entails inquiry into whether affirmance would skew[ ] the fundamental fairness or basic integrity of the proceeding below in some major respect so as to result in a miscarriage of justice")

(alterations in the original) (quotation marks and citations omitted).

Moreover, the failure of the jury to acquit Saavedra of the crime charged in Count I can be attributed to the substantial proof contradicting Saavedra's claim of cooperation with the DEA. As no inaccuracy in the jury charge has been pointed to, nor was the evidence lacking in proof beyond reasonable doubt of the government's case, there is no reason to upset the judgment below. See United States v. Woodward, 149 F.3d 46, 68-69 (1st Cir. 1998) (stating that a Court of Appeals looks "at the entire charge, in light of the evidence, and determine[s] whether, taken as a whole, the court's instructions fairly and adequately submit[ted] the issues in the case to the jury") (internal quotation marks omitted) (alterations in the original).

**Affirmed**.