# United States Court of Appeals
## For the First Circuit

No. 16-1030

UNITED STATES,

Appellee,

v.

JOSÉ MEJÍA-ENCARNACIÓN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Torruella, Lipez, and Thompson,
Circuit Judges.

Rafael F. Castro-Lang on brief for appellant.
Francisco A. Besosa-Martínez, Assistant United States
Attorney, Mariana E. Bauzá-Almonte, Assistant United States
Attorney, Chief, Appellate Division, Rosa Emilia Rodríguez-Vélez,
United States Attorney, on brief for appellee.

April 4, 2018

**LIPEZ**, **Circuit Judge**.  José Mejía-Encarnación appeals from a judgment of conviction and a sentence of 121 months' imprisonment entered by the district court after he pleaded guilty to two counts of conspiring to possess with intent to distribute narcotics.  On appeal, Mejía argues that, at the change of plea hearing, the district court did not adequately probe whether the medications he was taking would affect the voluntariness of his plea, and that the district court abused its discretion by denying his third motion for substitute counsel after his plea was entered. He seeks to have his sentence vacated and the case remanded for a hearing to determine whether his guilty plea should be set aside. Because we find no plain error or abuse of discretion in the district court's actions, we affirm.

## I.

Mejía was indicted in July 2012 on two counts of knowingly and intentionally conspiring to possess with intent to distribute narcotics in violation of 21 U.S.C. § 846.  He had allegedly conspired with two others, one of whom turned out to be a government informant, to import cocaine and heroin into Puerto Rico from the Dominican Republic in March through May of 2012. Mejía instructed the informant to travel from Puerto Rico to the Dominican Republic in his car via ferry, to meet with a supplier who would load the car with narcotics, and to return to Puerto Rico with the car.  Subsequently, upon re-entry into Puerto Rico,

Customs and Border Patrol agents stopped and searched the vehicles of both the informant and Mejía's co-conspirator, finding 2,576 grams of heroin in one vehicle and 8 kilograms of cocaine in the other.

During the pre-trial proceedings, Mejía was represented by three different attorneys. First, Federal Public Defender Victor González-Bothwell was appointed to represent him, but Mejía soon chose to retain Luis Rivera-Rodríguez as counsel instead. While Mejía was represented by Rivera, the government presented him with a plea deal. After seeking and receiving several extensions of the deadline to file a motion for change of plea, Mejía moved for change of plea at a scheduling conference, and a hearing on that motion was set for May 2013.

A week before the scheduled change of plea hearing, Mejía filed a pro se motion for substitute counsel, claiming that Rivera had provided ineffective assistance of counsel due to his "lack of action and continuous omissions." Rivera then filed a letter explaining to the court that he had met with Mejía and that Mejía had stated that he filed the motion because he was frustrated that Rivera "could not get a better offer/plea agreement from the government," but that Mejía had indicated that he was willing to continue to have Rivera represent him. At the hearing, Mejía confirmed that he filed the motion because he was unsatisfied with the government's plea deal. The court explained that "[t]he

decision to offer you a plea has nothing to do with Mr. Rivera. That's a decision of the prosecution." The government agreed, stating that its "offer stands as it is" and that "[i]t's nothing that is in the power or control of Mr. Rivera." Despite these explanations, Mejía stated that he wanted new counsel, and the court granted his request, appointing Ovidio E. Zayas-Pérez to represent him.

While represented by Zayas, Mejía filed a second change of plea motion. On the day of the hearing on that motion, however, the government informed the magistrate judge that no agreement had been reached, and it requested that a trial date be set. At the same time, Zayas filed a motion to withdraw as Mejía's defense counsel. His motion explained that, although he had obtained a more favorable plea deal than the one offered to Mejía when he was represented by Rivera, and although he had met with Mejía several times to discuss the plea offer, Mejía was not satisfied with his representation and had rejected the deal. The judge granted the motion and reappointed González, the federal public defender, to represent Mejía.

Although González continued to try to negotiate a plea agreement on Mejía's behalf, the government declined to offer another deal. Mejía was thus confronted with the option of pleading guilty without any agreement or going to trial. On the day the trial was set to begin, González informed the court that

Mejía intended to enter a guilty plea, and a change of plea hearing was held.  The court began the hearing by asking Mejía how he was feeling.  The following conversation ensued:

| | |
|---|---|
| MR. MEJÍA: | I feel fine physically and mentally in spite of the fact that I have some health conditions. I have high blood pressure. I have a hernia in my groin. I also take medication for cholesterol. And finally I'm taking medication to be able to sleep, as well as for depression. |
| COURT INTERPRETER: | Correction. I'm taking medication for depression in order to be able to sleep because I can't sleep. |
| THE COURT: | So you're taking for cholesterol some medicine and to help you to sleep? |
| MR. MEJÍA: | Yes. And also for high blood pressure. |
| THE COURT: | And how often do you take these medicines? |
| MR. MEJÍA: | Daily. |
| THE COURT: | In the morning or except the one to sleep which is at night? |
| MR. MEJÍA: | No, Your Honor, I take all my medication at night because I work in the kitchen at the MDC institution. |

Satisfied with Mejía's answers, the court moved on with the plea colloquy before ultimately concluding that Mejía was competent to plea.  The court accepted Mejía's guilty plea to both counts of the indictment.

- 5 -

Mejía subsequently requested that González file a motion to withdraw as his attorney and a motion to withdraw his plea of guilty. At the hearing on those motions, Mejía told the judge that he did not trust González and that his "Constitutional [r]ights as an inmate" had been violated. When the judge asked "which ones?", Mejía did not name any specific rights, saying only that he thought there were more motions that González should have filed. Mejía also asserted that the court should grant his motion to withdraw his guilty plea because he was innocent. The judge pressed Mejía to explain how his assertion of innocence could be reconciled with a pro se motion he had filed that admitted his participation in the conspiracy and encouraged the court to see his role as a minor participant. When Mejía was unable to explain which of those positions was the truth, the judge denied both his motion to withdraw his plea of guilty and González's motion to withdraw as counsel, explaining to Mejía that he did not have a right to counsel of his choice, that González was a well-regarded and experienced attorney, and that, in the absence of specific allegations regarding the inadequacy of González's representation, there was no reason for the court to grant the motion to withdraw.

At the sentencing hearing, Mejía stated that he had not reviewed the presentence report (PSR) with González, despite González's assurance to the contrary. The court therefore reviewed and discussed relevant portions of the PSR with Mejía, and Mejía

indicated that the information regarding his personal background, finances, and criminal record was correct. In addition, González argued that the guideline range should have been lower than the range calculated in the PSR and that Mejía should be sentenced to the statutory minimum sentence of 120 months. The district court ultimately sentenced Mejía to 121 months' imprisonment. This appeal followed.

## II.

### A. Medication Inquiry During Plea Colloquy

Mejía contends that the district court violated Federal Rule of Criminal Procedure 11 by insufficiently inquiring about the medications he was taking and their effect on his capacity to make an intelligent and voluntary guilty plea. Because Mejía did not move to withdraw his guilty plea on this ground in the district court,[1] our review is for plain error. See United States v. Mescual-Cruz, 387 F.3d 1, 7 (1st Cir. 2004) ("An unobjected-to error in the Rule 11 colloquy is reversible error only upon a showing of plain error."). Pursuant to the plain error standard, Mejía must show "(1) that an error occurred (2) which was clear or

---

[1] Although Mejía did move to withdraw his guilty plea, he did not articulate in the motion a particular reason why it should be withdrawn, requesting only that "his change of plea to guilty be vacated, and a hearing be had if necessary." United States v. Mejía-Encarnación, No. 3:12-cr-00567-PG, ECF No. 244, at 1 (D.P.R. 2015). At the hearing on the motion, he asserted only that the plea should be withdrawn because he was innocent.

obvious and which not only (3) affected his substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  United States v. Delgado-Hernández, 420 F.3d 16, 20 (1st Cir. 2005) (alteration omitted) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

As a general matter, "[w]hen a defendant in a Rule 11 hearing confirms that he is on medication, the district court has a duty to inquire into the defendant's capacity to enter a plea." Cody v. United States, 249 F.3d 47, 52 (1st Cir. 2001).  Here, the record shows that the district court did ask follow-up questions of Mejía to discover the purpose, timing, and frequency of the medications he was taking.  Although the court did not specifically inquire into the names and doses of the medication, there is "no settled rule that a hearing cannot proceed unless precise names and quantities of drugs have been identified."  United States v. Kenney, 756 F.3d 36, 47 (1st Cir. 2014) (quoting United States v. Savinon-Acosta, 232 F.3d 265, 269 (1st Cir. 2000)).

Mejía argues that, pursuant to our decision in United States v. Parra-Ibañez, 936 F.2d 588, 596 (1st Cir. 1991), the court was nonetheless required to inquire into the effect of each medication.  In that case, we held that the district court erred by "failing to explore questions raised by appellant's acknowledged use of prescription medications" after the defendant indicated that within the last 24 hours he had ingested three

medications, including one to "control [his] nerves." Id. at 590. Since Parra-Ibañez was decided, however, we have clarified that the court's error was a "failure to make any further inquiry whatsoever" into the defendant's capacity to enter a voluntary plea. United States v. Llanos-Falero, 847 F.3d 29, 34 (1st Cir. 2017). Further, we have explained that the circumstances of that case -- "the defendant had, prior to the plea, revealed a history of psychiatric treatment and drug abuse sufficient to justify a psychiatric evaluation for competency," and then "after the plea, there was additional concrete evidence of serious emotional disturbance" -- distinguish it from cases that involve a defendant with no known mental health or drug abuse issues, such as this one. Savinon-Acosta, 232 F.3d at 269. Instead, we have emphasized that the essential inquiry is whether any medication taken by the defendant will affect his ability to understand the proceedings or enter a voluntary guilty plea. See Llanos-Falero, 847 F.3d at 34 (upholding plea colloquy on plain error review where the court asked the defendant only "Do you feel okay today?" and "Can you make a voluntary and knowing plea?").

Here, although the court did not specifically inquire whether the medications affected Mejía's ability to enter a voluntary plea, the court did ask Mejía how he was feeling, and he responded that he felt fine "physically and mentally." (Emphasis added.) Further, we are satisfied that Mejía's responses to the

- 9 -

court's general questions regarding the voluntariness of his plea,[2] when considered together with his performance throughout the hearing, were sufficient to support a finding by the court that he was not under the influence of any medication and was competent to plea. See Savinon-Acosta, 232 F.3d at 269 (stating that "the defendant's own performance in the course of a colloquy may confirm, or occasionally undermine, his assurances"). After the court explained that it was too late for the government to submit a plea agreement, Mejía affirmed that he understood "perfectly" that he now had to "decide between the two options that had been offered" -- going to trial or entering a straight guilty plea. When the court asked which one he chose, he said, "I plead guilty. I accept the guilt." Then, the court started to proceed with the plea colloquy, but Mejía insisted that he did not have enough time to meet with his attorney to go over the evidence against him and requested that the court give him time to confer with his attorney, which it did. Contrary to Mejía's contention that his actions at the hearing were "erratic," Mejía's behavior demonstrated that he was aware of exactly what was happening, what his choices were,

---

[2] The court asked standard questions regarding Mejía's understanding of the charges and evidence against him, the consequences of pleading guilty, his opportunity to consult with counsel, the range of possible sentences for the crimes with which he had been charged, and whether he had been improperly coerced or induced into pleading guilty. Mejía answered each question clearly and directly.

and what rights he had during the hearing. It was therefore not erroneous for the court to conclude that he was competent to plea without further inquiry into his medications or mental state. See United States v. Morrisette, 429 F.3d 318, 323 (1st Cir. 2005) (finding no error where, "after observing [the defendant's] demeanor first hand, the district court made an explicit finding that [he] was competent to enter the guilty plea"). Hence, Mejía's argument fails at the first step of the plain error analysis.

B.    Motion for Substitute Counsel

Mejía contends that the district court erred by denying his third motion for substitute counsel because his relationship with counsel suffered from a lack of trust that amounted to a conflict of interest. We review the denial of the motion for substitute counsel for abuse of discretion. See United States v. Karmue, 841 F.3d 24, 31 (1st Cir. 2016).

"A criminal defendant's Sixth Amendment right to counsel is a right of the highest order." United States v. Jones, 778 F.3d 375, 388 (1st Cir. 2015). Although an "essential component of that right is the accused's opportunity to obtain counsel of his own choice," United States v. Díaz-Rodríguez, 745 F.3d 586, 590 (1st Cir. 2014) (quoting United States v. Panzardi Alvarez, 816 F.2d 813, 815 (1st Cir. 1987)), the Sixth Amendment does not give a defendant "an unbounded right to the particular counsel of his choosing," Jones, 778 F.3d at 388. To determine whether the

district court's denial of a motion for substitute counsel violated the defendant's Sixth Amendment rights, we assess three factors: "(1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense." United States v. Kar, 851 F.3d 59, 65 (1st Cir. 2017) (quoting United States v. Francois, 715 F.3d 21, 28 (1st Cir. 2013)). Because the government does not challenge the timeliness of Mejía's motion, we begin with the second factor: the adequacy of the court's inquiry.

Although Mejía asserts that he was "not allowed to articulate his reasons" for seeking substitute counsel and did not have an opportunity to explain the asserted conflict of interest, the record demonstrates that the court gave him several opportunities at the hearing to explain his concerns with his counsel's representation. When Mejía initially asserted broad complaints such as lack of trust, ineffective assistance, and violation of his constitutional rights, the court asked clarifying questions. In particular, the court asked Mejía to articulate how he thought his constitutional rights had been violated and why he did not trust his attorney, but Mejía was unable to point to any concrete problems with González's representation other than

- 12 -

González's failure to file unspecified motions.[3] The court correctly determined that this vague complaint alone was not a sufficient reason to justify substitution of counsel. See United States v. Woodard, 291 F.3d 95, 108 (1st Cir. 2002) (holding that an attorney's failure to file a "motion that he considered to be meritless does not constitute good cause for substitution of counsel"). Contrary to Mejía's contention, the court's thorough inquiry was more than adequate to allow the district court to determine whether substitution of counsel was necessary. See, e.g., United States v. Allen, 789 F.2d 90, 93 (1st Cir. 1986) (holding that the court's inquiry was "comprehensive" where "[t]he court invited appellant to make a statement, listened to his reasons for being dissatisfied with his counsel, and found them to be without merit").

With regard to the third factor, a "total lack of communication preventing an adequate defense," Mejía contends that González had a conflict of interest that prevented him from adequately representing Mejía with respect to his motion to withdraw his guilty plea. However, Mejía has never explained --

---

[3] Mejía's assertion that he would have explained the alleged conflict of interest and violations of his rights if given the chance at the hearing is undermined by his failure to do so in his briefing on appeal. Mejía has never identified what motion he wanted González to file or how González's failure to file that motion affected his constitutional rights or led to a conflict of interest.

at the hearing or now on appeal -- the specifics of the alleged conflict of interest, other than his disagreement with González's decision not to file motions that Mejía thought should have been filed. "Disfavoring counsel's guidance is distinct from failing to communicate with counsel," and Mejía is not entitled to substitute counsel merely because he disagreed with unspecified strategic decisions made by González. Kar, 851 F.3d at 66.

Moreover, the record reflects that González continued to represent Mejía to the best of his ability despite the alleged breakdown in trust and communication. González met with Mejía after the change of plea hearing and fulfilled Mejía's request that he file motions to withdraw the guilty plea and to withdraw as counsel, despite the fact that Mejía was no longer cooperating with González's efforts to represent him. At the beginning of the hearing on the motions, González explained Mejía's position regarding the motion for substitute counsel. Following the court's denial of the motion for substitute counsel, González continued to meet with Mejía to prepare for sentencing and zealously represented him at the sentencing hearing, arguing for the statutory minimum sentence despite Mejía's refusal to cooperate with González and to participate in the preparation of the PSR. See United States v. Myers, 294 F.3d 203, 209 (1st Cir. 2002) (upholding denial of motion for substitute counsel where the attorney "continued to

represent the appellant to the bitter end, and represented him proficiently").

Thus, the record demonstrates that despite the alleged breakdown in communication between Mejía and González, González was still able to adequately represent Mejía, and that any effect on the representation was caused by Mejía's own refusal to participate in his representation, not on a breakdown of trust or communication.  See United States v. Reyes, 352 F.3d 511, 516 (1st Cir. 2003) (stating that "a defendant cannot compel a change to counsel by the device of refusing to talk with his lawyer").  The district court therefore did not abuse its discretion when it denied Mejía's third motion for substitute counsel.

Affirmed.