# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 9, 2013

## TITUS MILLER v. STATE OF TENNESSEE

**Appeal from the Circuit Court of Madison County**
**No. C10217     Donald H. Allen, Judge**

---

**No. W2012-01105-CCA-R3-PC  - Filed May 7, 2013**

---

Titus Miller ("the Petitioner") filed a petition for post-conviction relief from his convictions for possession of marijuana and evading arrest. In his petition, he alleged that he received ineffective assistance of counsel. After an evidentiary hearing, the post-conviction court denied relief, and this appeal followed. On appeal, the Petitioner asserts that his counsel at trial was ineffective in failing to file a motion to suppress. Upon our thorough review of the record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment**
**of the Circuit Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ, joined.

J. Collins Morris, Jackson, Tennessee, for the appellant, Titus Miller.

Robert E. Cooper, Jr., Attorney General & Reporter; Sophia S. Lee, Senior Counsel; Tom P. Thompson, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

The Petitioner was indicted in December 2007 on six counts: possession of marijuana with intent to sell or deliver, aggravated assault, evading arrest, resisting arrest, driving under the influence of an intoxicant ("DUI"), and violation of the seat belt law. A jury convicted the Petitioner in December 2008 of evading arrest and the lesser included offense of possession of marijuana. The jury found the Petitioner not guilty of aggravated assault, resisting arrest, DUI, and violation of the seat belt law. The trial court sentenced the

Petitioner to eleven months, twenty nine days at 75% on each conviction, to be served consecutively to each other, and consecutive to a sixty-month federal sentence. On appeal, this Court affirmed the convictions and sentences. See State v. Titus A. Miller, No. W2009-00458-CCA-R3-CD, 2010 WL 2219593, at *8 (Tenn. Crim. App. May 27, 2010). To assist in the resolution of this proceeding, we repeat here the summary of the facts set forth in this Court's opinion resolving the Petitioner's direct appeal:

> *State's Proof.* Officer Samuel Gilley, of the Jackson Police Department, testified that around 7:30 p.m. on June 20, 2007, he observed the [Petitioner] driving on Highland Avenue without wearing a seat belt. Officer Gilley initiated his emergency equipment, and the [Petitioner] pulled over at the next side street. A second person, Michael Aldrich, was in the front passenger seat. Officer Gilley asked for the [Petitioner's] license and registration and noticed that the [Petitioner's] eyes were bloodshot, a smell of marijuana was coming from the [Petitioner's] person and the vehicle, and the [Petitioner's] speech was slurred. Officer Gilley believed the [Petitioner] was intoxicated and asked him to step out of the vehicle "to perform some field sobriety tests on him." The [Petitioner] complied.

> Officer Robertson arrived on the scene in a separate patrol car and stayed on the passenger's side of the car to watch Mr. Aldrich while Officer Gilley took the [Petitioner] to the rear of the car, on the driver's side. Officer Gilley testified that the [Petitioner] "began to act a little funny, reaching around in his pants, reaching for his waistband and stuff like that." Officer Gilley asked the [Petitioner] to place his hands on his head and began to frisk him for a weapon. The [Petitioner] became tense and started shaking. Officer Gilley "told him to relax . . . and he began at that time to try to run and get away from me." He grabbed the [Petitioner] around the waist, and they "struggled a little bit. . . ." They ran by the partially opened driver's side door, and the [Petitioner] grabbed the door. The door hit Officer Gilley in the face, and he "momentarily blacked out." Officer Gilley testified that "what [he] remember[ed] after that is being on the ground with him tussling" and he "struck [the Petitioner] a couple of times . . . in the facial area."

> As a result of the altercation, Officer Gilley had a knot above his right eye and was bleeding from his eye socket. He received treatment at Convenient Care. His vision was blurry, and he continued to have problems with his vision, resulting in the need to wear eyeglasses. The [Petitioner] suffered injury to his mouth and received treatment at Jackson-Madison County General Hospital.

Officer Robertson helped Officer Gilley handcuff the [Petitioner]. When Officer Gilley walked to the passenger-side of the car to get Mr. Aldrich "under control," the [Petitioner] began running away with Officer Robertson chasing him. Officer Gilley called for back-up.

When other officers arrived on the scene, Officer Gilley requested that Officer Trey Trull assist him in searching the vehicle because he "was a little bit disoriented and dizzy." They discovered a bag containing several smaller bags of marijuana in the car. Officer Gilley testified that the packaging was consistent with the way marijuana is packaged for resale. They did not find any drug paraphernalia. Officer Robertson recovered a small bag of marijuana that the [Petitioner] had dropped during the chase. The bag from the car amounted to 13.9 grams of marijuana, and the bag dropped by the [Petitioner] weighed 5.5 grams of marijuana. The passenger, Mr. Aldrich, eventually pled guilty to possession of marijuana.

On cross-examination, Officer Gilley testified that in June 2007, his patrol car was equipped with a video camera, but the camera was not operating due to a malfunction. Officer Gilley said he saw the [Petitioner] "riding up and down Highland Avenue that day. . . ." The first time Officer Gilley saw him, the [Petitioner] was wearing a seat belt, but fifteen minutes later, he was not wearing it. Officer Gilley pulled him over because of the seat belt; however, he did not follow the [Petitioner] long enough to determine his driving ability. The [Petitioner] already had his license and registration ready to give to Officer Gilley by the time he reached the [Petitioner's] car. The [Petitioner] did not stumble or fall when he exited the car. Officer Gilley said he smelled burning marijuana on the [Petitioner] and in the [Petitioner's] car but did not find anything in the car that would indicate that the occupants had recently smoked marijuana. The bag of marijuana found by the officers in the car was stuffed between the console and the passenger seat.

Prior to pulling the [Petitioner] over, Officer Gilley had taken a break. He parked his patrol car alongside Officer Robertson's patrol car in the Software City parking lot. He recalled that he testified at the preliminary hearing that he and Officer Robertson might have discussed the [Petitioner] while they were on break, and one of them said, "Let's go do something." Officer Robertson arrived on the scene soon after Officer Gilley pulled the Petitioner over because he was in the area and heard Officer Gilley over the radio; Officer Gilley denied that they had previously orchestrated Officer Robertson's arrival.

Officer Gilley agreed that he punched the [Petitioner] even though he had a baton and pepper spray. He denied hitting the [Petitioner] as hard as he could and suggested that the [Petitioner's] injury might have come from hitting the ground during their struggle. Officer Robertson did not strike the [Petitioner] in Officer Gilley's presence. He agreed that the [Petitioner] went to the Regional Medical Center in Memphis after he went to Jackson-Madison County General Hospital. Officer Gilley did not ask the Petitioner to submit to blood tests, nor did he obtain samples of the [Petitioner's] blood from the hospital for testing.

Officer Ashley Robertson, of the Jackson Police Department, testified that on June 20, 2007, he and Officer Gilley took a break together, and soon after they went back to work, he heard Officer Gilley say over the radio that he was making a traffic stop on Hicks Street. Officer Robertson was close to that location, so he went to Hicks Street to back up Officer Gilley. He went to the passenger side of the car and tried to get identification from Michael Aldrich. He heard Officer Gilley tell the [Petitioner] that he was going to frisk him for weapons. Officer Robertson then heard a bang and saw Officer Gilley and the [Petitioner] struggling on the ground. By the time he got to them, the [Petitioner] was on his feet, so Officer Robertson tackled him, and Officer Gilley handcuffed him. At that time, the [Petitioner] complained that his jaw was broken. Officer Robertson was attempting to perform a search of the [Petitioner] when the [Petitioner] ran away. As the [Petitioner] was running, Officer Robertson saw him reach into his pants and then "something [fell] out of his pants." The [Petitioner] eventually ran into a structure at 112 Hicks Street, which is where Officer Robertson caught up to him. Officer Robertson had another officer backtrack the chase, and that officer found a bag of marijuana. Officer Robertson testified that the bag was consistent with what he saw fall out of the [Petitioner's] pants. He further testified that the [Petitioner] did not strike him at any point. He did not transport the [Petitioner] to the hospital.

On cross-examination, Officer Robertson said that Officer Gilley had seen the [Petitioner] about fifteen minutes prior to the traffic stop, during their break. He agreed that one of them said either "Let's go to work" or "Let's go do something" at the end of their break. Officer Robertson testified that his patrol car did not have a video camera that day because the department was in the process of replacing it. He denied punching the [Petitioner]. He said the [Petitioner] was "spitting out big puddles of blood" and was injured either from Officer Gilley punching him or Officer Robertson falling on him. He did not see Officer Gilley punch the [Petitioner] and did not recall telling him that

he had gone too far. Officer Robertson said that the [Petitioner] dropped marijuana during the chase but not inside his vehicle.

Officer Trey Trull, of the Jackson Police Department, testified that on June 20, 2007, he responded to a call either for assistance or that there was a foot pursuit. When he arrived at the scene, he observed Officer Gilley leaning against a white Crown Victoria car. He appeared dazed and asked Officer Trull for assistance in searching the car. Officer Trull pointed out the bag of marijuana, which Officer Gilley recovered. Officer Trull was present when Officer Robertson led the [Petitioner] back to the vehicle. He was unable to tell what condition the [Petitioner] was in at that time.

Special Agent Tarsha Bond, a forensic scientist with the Tennessee Bureau of Investigation, testified that she tested substances related to this case. She determined that the substances in both the bag containing smaller bags and the individual bag were marijuana. The total weight of the marijuana in both bags was 15.6 grams.

*Defense Proof.* Renarda Ford testified that on June 20, 2007, she lived at 320 East Forest Avenue, near Highland Avenue. On that day, she witnessed the traffic stop on Hicks Street. She testified that she saw [the Petitioner] getting out of the car and an officer taking one hand and putting it behind his back and putting him on the ground and the officer then placed his knee on the back of his neck. After that, another officer came from the passenger side of the car around and started punching [the Petitioner].

She did not see the [Petitioner] provoke the officers or hit one of the officers with a car door. When Ms. Ford saw the incident, she did not recognize the [Petitioner], whom she knows through a friend, but she learned later that he was involved.

On cross-examination, Ms. Ford testified that she was behind the two patrol cars during the incident and was far enough away that she could not identify the faces of those involved. She did not report the incident to authorities.

The [Petitioner] testified that on June 20, 2007, he was wearing his seat belt when Officer Gilley pulled him over. He was not under the influence of any drugs and had not been smoking marijuana. When he stepped out of his car, he was nervous, and he told the officer that he had pulled him over for no reason. Officer Gilley became "irate" and threw the [Petitioner] to the ground. Officer Robertson came from the other side of the car and began punching

him, seven to eight times. The officers handcuffed him while he was lying on the ground and walked several feet away. He heard Officer Gilley tell Officer Robertson that he had gone too far. The [Petitioner] said that the officers' conversation made him afraid for his life because he thought they might plant evidence on him and then kill him. He got up and went to a yard on Hicks Street where people were outside and "laid down in the grass so that someone would be witnessing what was going on. . . ."

The [Petitioner] said that Officer Robertson took him to Jackson-Madison County General Hospital. The [Petitioner] told the nurses that the police had beaten him. After thirty minutes, Officer Robertson uncuffed him and left. The attending doctor told him that the hospital would transfer him to the Regional Medical Center in Memphis, where an oral surgeon would repair his jaw. The [Petitioner] testified that his mouth was wired shut for ten weeks. He identified pictures that he took of other injuries he sustained on June 20, including scrapes on the left side of his face, his shoulder, and his knees. He denied hitting Officer Gilley with a car door and denied that the small bag of marijuana was his.

On cross-examination, the [Petitioner] said that he had used marijuana in the past. He recalled that Officer Robertson slid on his knees, on hard pavement, when he came to the driver's side of the car and began punching him. The [Petitioner] said that Michael Aldrich witnessed everything and testified on his behalf at the preliminary hearing. Mr. Aldrich had since pled guilty to possession of the marijuana in the car. The [Petitioner] said that the marijuana in the car was solely Mr. Aldrich's. When asked why the officers would beat him, the [Petitioner] said he believed the officers' conduct was racially-motivated, and they had planned to give "a nice little beat down on somebody" while their patrol car cameras were not working.

Id. at *1- 5.

*Post-Conviction*

After conclusion of the direct appeal, the Petitioner timely filed a petition for post-conviction relief, alleging that he received ineffective assistance of counsel at trial. Although he claimed several instances of deficient performance in the post-conviction court, the Petitioner has raised only one issue on appeal: that his counsel at trial ("trial counsel") failed to file a motion to suppress challenging the legality of the stop of his vehicle. Accordingly, we will address only the facts adduced at the post-conviction hearing relevant to this issue.

Trial counsel testified that he was appointed to represent the Petitioner sometime after the Petitioner's arraignment. According to trial counsel, the Petitioner had been represented by counsel ("prior counsel") in earlier proceedings involving this incident prior to the Petitioner's indictment in this case. Trial counsel stated that he obtained discovery from the State and provided the Petitioner with a copy. He also obtained a transcript of the Petitioner's preliminary hearing and reviewed it in addition to the discovery. Trial counsel testified that he discussed with the Petitioner his charges and "thoroughly" reviewed the facts of the case with him.

Trial counsel acknowledged that the Petitioner maintained that he had been wearing his seat belt the entire time before he was pulled over. Trial counsel could not recall whether he and the Petitioner discussed that prior counsel had filed a motion to suppress. Trial counsel agreed that he also could have filed a motion to suppress, even though one had been filed in the earlier proceedings, but that he did not.

The Petitioner's counsel at the post-conviction hearing ("post-conviction counsel") asked trial counsel whether he ever thought that he should have filed a motion to suppress in this case. Trial counsel responded, "I thought about it. I thought it would probably be denied. Just my experience, I thought it would be denied by the [t]rial [c]ourt, so I didn't file one." Trial counsel could not recall whether he discussed with the Petitioner his decision not to file a motion to suppress before the jury trial. In this regard, he also testified:

> I know we talked about [how] he wanted me to [f]ile a [m]otion to [s]uppress and we talked about it a lot after the trial based on how the jury found[] [him not guilty of the seat belt violation,] but I don't remember if we specifically talked about filing one.

Trial counsel also could not recall at what time specifically he made the decision not to file a motion to suppress. However, he stated that it "probably would have been the first time [he] looked through the discovery materials and [he] felt that it probably would be denied so [he] didn't file that."

Trial counsel did not believe that the Petitioner "voice[d] any concern" about the motion to suppress before the trial, but he stated that he "can't be 100 percent positive." He agreed, however, that after the jury acquitted the Petitioner of the seat belt violation the Petitioner "became concerned with the fact that the [m]otion to [s]uppress had not been filed[.]" Post-conviction counsel asked trial counsel why the Petitioner was concerned, and trial counsel responded,

> His position was because the jury by finding him not guilty, they must have believed he was wearing his seat belt so therefore the officers were not

being truthful when they said that he did not have his seat belt on. We talked about [how] we were arguing that point to the jury at a trial, but we would be arguing . . . a [m]otion to [s]uppress to the [j]udge.

Trial counsel stated that, even after the jury acquitted the Petitioner of the seat belt violation, he still believed that if he had filed a motion to suppress with the trial court that "it probably would be denied."

On cross-examination, trial counsel testified that he met with the Petitioner after he was appointed in this case. He believed that he met with the Petitioner three times at the jail and that he also met with the Petitioner at each court appearance prior to the trial. He agreed that during those meetings he discussed with the Petitioner the case, potential witnesses, and potential defenses.

The State asked trial counsel whether the motion to suppress was denied in the earlier proceedings. Trial counsel responded, "It was bound over, so obviously it was." Trial counsel also stated that it was after the Petitioner was convicted of the two misdemeanors when he "really remember[ed] him asking about it." Lastly, he agreed that "it was [his] professional opinion . . . that the [m]otion to [s]uppress would not be successful if filed[.]"

The Petitioner testified that he was excited when the jury found him not guilty of four of the charges on which he was indicted. However, when he was being taken back to his "cell, [he] was thinking about[] . . . the whole issue of the stop being illegal." He agreed that he was concerned with the fact that the jury found him not guilty of violating the seat belt law, which was the alleged reason that he had been pulled over initially. He further agreed that he wanted to know how he could have been found guilty of anything that followed the stop. With regard to the suppression motion filed in the earlier proceedings, the Petitioner stated that the court did not hear the motion because it stated "that the issue at hand was whether [there] was probable cause or not" and that "[t]hat was the only issue [the court] was handling at that time." Thus, he stated that the court did not deny the motion to suppress.

On cross-examination, the Petitioner denied that he did not raise the motion to suppress issue until after the jury trial. He stated that he asked trial counsel to file a motion to suppress before the trial. The Petitioner also testified that he told trial counsel his opinion with respect to filing that motion, provided trial counsel a copy of the preliminary hearing transcript in his case, and asked trial counsel to "file [sic] the same strategy that [prior counsel] used." He stated that trial counsel "didn't say anything about the suppression," including that trial counsel believed the trial court would deny it. Lastly, the Petitioner stated that if trial counsel "did everything that was necessary [the Petitioner] would have got [sic] acquitted of all the charges and not just[] . . . some of them."

At the conclusion of the hearing, the post-conviction court took the matter under advisement. It issued a written ruling denying the Petitioner's petition for post-conviction relief. The post-conviction court held that the Petitioner failed to prove his allegations by clear and convincing evidence, that the "advice given and services rendered by trial counsel[] . . . were within the range of competence demanded of attorneys," and that none of trial counsel's "actions or omissions were so serious as to fall below the objective standard of reasonableness under prevailing professional norms." With regard to the Petitioner's claim that he received ineffective assistance of counsel because trial counsel failed to file a motion to suppress, the post-conviction court specifically held

> [t]hat [trial counsel] obtained full discovery from the State, met with the Petitioner on several occasions prior to trial, and discussed trial strategy with the Petitioner. Furthermore, the [c]ourt credits the testimony of [trial counsel] that his opinion was that there was no legal basis to file a [m]otion to [s]uppress.

The Petitioner timely appealed. In this appeal, the Petitioner contends that trial counsel was ineffective because he did not file a motion to suppress challenging the legality of the stop of the Petitioner's vehicle.[1]

## Analysis

### *Standard of Review*

Relief pursuant to a post-conviction proceeding is available only where the petitioner demonstrates that his or her "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). To prevail on a post-conviction claim of a constitutional violation, the petitioner must prove his or her allegations of fact by

---

[1] The Petitioner filed a pro se reply brief to the State's appellate brief. In the pro se reply brief, the Petitioner also raised additional grounds of ineffective assistance of counsel that were not raised in his initial appellate brief. Our supreme court has recognized "that a defendant in a criminal case may not proceed pro se while simultaneously being represented by counsel." See, e.g., State v. Davis, 141 S.W.3d 600, 615 n. 12 (Tenn. 2004). Thus, we will not consider the reply brief. We also note that a reply brief is "limited in scope to a rebuttal of the argument advanced in the appellee's brief." Caruthers v. State, 814 S.W.2d 64, 69 (Tenn. Crim. App. 1991). It is not a mechanism to raise new issues not raised in the initial brief. See, e.g., Tenn. R. App. P. 27(c); Caruthers, 814 S.W.2d at 69; Owens v. Owens, 241 S.W.3d 478, 499 (Tenn. Ct. App. 2007); State v. Jim Gerhardt, No. W2006-02589-CCA-R3-CD, 2009 WL 160930, at *20 (Tenn. Crim. App. Jan. 23, 2009).

"clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2006). See Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). This Court will not overturn a post-conviction court's findings of fact unless the preponderance of the evidence is otherwise. Pylant v. State, 263 S.W.3d 854, 867 (Tenn. 2008); Sexton v. State, 151 S.W.3d 525, 531 (Tenn. Crim. App. 2004). We will defer to the post-conviction court's findings with respect to the witnesses' credibility, the weight and value of their testimony, and the resolution of factual issues presented by the evidence. Momon, 18 S.W.3d at 156. With respect to issues raising mixed questions of law and fact, however, including claims of ineffective assistance of counsel, our review is de novo with no presumption of correctness. See Pylant, 263 S.W.3d at 867-68; Sexton, 151 S.W.3d at 531.

*Ineffective Assistance of Counsel*

The Petitioner argues on appeal that he was denied effective assistance of counsel because trial counsel failed to file a motion to suppress challenging the legality of the stop of his vehicle. The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel at trial.[2] Both the United States Supreme Court and the Tennessee Supreme Court have recognized that this right is to "reasonably effective" assistance, which is assistance that falls "within the range of competence demanded of attorneys in criminal cases." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The deprivation of effective assistance of counsel at trial presents a claim cognizable under Tennessee's Post-Conviction Procedure Act. See Tenn. Code Ann. § 40-30-103; Pylant, 263 S.W.3d at 868.

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must establish two prongs: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. See Strickland, 466 U.S. at 687; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The petitioner's failure to establish either prong is fatal to his or her claim of ineffective assistance of counsel. Goad, 938 S.W.2d at 370. Accordingly, if we determine that either prong is not satisfied, we need not consider the other prong. Id.

To establish the first prong of deficient performance, the petitioner must demonstrate that his lawyer's "acts or omissions were so serious as to fall below an objective standard of 'reasonableness under prevailing professional norms.'" Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting Strickland, 466 U.S. at 688). Our Supreme Court has explained that:

---

[2] The Sixth Amendment right to counsel is applicable to the States through the Fourteenth Amendment to the United States Constitution. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963); State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993).

-10-

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

Baxter, 523 S.W.2d at 934-35 (quoting Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974)). When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). Additionally, a reviewing court "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant, 263 S.W.3d at 869 (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)). "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of Strickland." Id.

Turning to the Petitioner's specific argument, we hold that the Petitioner has failed to establish deficient performance on the part of trial counsel. Trial counsel testified at the post-conviction hearing that he decided against filing a motion to suppress. In this regard, he stated, "I thought about it. I thought it would probably be denied. Just my experience, I thought it would be denied by the [t]rial [c]ourt, so I didn't file one." He again reiterated that it was his professional opinion that the motion to suppress would not be successful if filed. The Petitioner asserts that trial counsel's decision was "per se ineffective." We disagree. He cites to no case law in his brief in support of this novel argument. The proof established

-11-

that trial counsel reviewed the preliminary hearing transcript, reviewed the discovery provided by the State, and discussed the case with both the Petitioner and prior counsel. Accordingly, without any showing otherwise by the Petitioner, deference is given to trial counsel's decision not to file a motion to suppress. See Cooper, 847 S.W.2d at 528 (holding that deference is given to "tactical choices . . . if the choices are informed ones based upon adequate preparation" (citing Hellard, 629 S.W.2d at 9 )); see also Kyrie T. Adams v. State, No. W2011-02501-CCA-R3-PC, 2012 WL 3206043, at *6 (Tenn. Crim. App. May 1, 2012); James Carl Ferguson v. State, No. 922, 1991 WL 105291 (Tenn. Crim. App. June 19, 1991) (holding that trial counsel was not ineffective in failing to file a motion to suppress because "he was of the opinion that it would have been an exercise in futility to have filed" the motion). Therefore, the Petitioner has failed to establish by clear and convincing evidence that Trial Counsel was deficient in this regard.

Moreover, looking at the prejudice prong, the Petitioner also failed to make any showing of a reasonable probability that he would have been successful at the suppression hearing. In order to prove prejudice, the Petitioner must show a "reasonable probability that but for counsel's errors the result of the proceeding would have been different." Vaughn, 202 S.W.3d at 116 (citing Strickland, 466 U.S. at 694). Here, although the jury found the Petitioner not guilty of the seat belt violation which was Officer Samuel Gilley's reason for stopping the Petitioner's vehicle, this fact is not determinative. The standard at a jury trial is guilt beyond a reasonable doubt. See, e.g., Jackson v. Virginia, 443 U.S. 307, 317-18 (1979). The standard at a suppression hearing is substantially different. Under these circumstances, at a suppression hearing the trial court would have to determine whether Officer Gilley had "probable cause or reasonable suspicion to believe that a traffic violation has occurred." See State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997). Given the facts of this case, the trial court, in all likelihood, would have found reasonable suspicion for the stop based on Officer Gilley's testimony. The fact that the jury found, at least, that reasonable doubt existed as to the Petitioner's guilt on the seat belt violation does not alter this conclusion.

Accordingly, the Petitioner is entitled to no relief on his ineffective assistance of counsel claim.

**CONCLUSION**

For the foregoing reasons, the Petitioner has failed to establish that he is entitled to post-conviction relief. Therefore, we affirm the judgment of the post-conviction court denying relief.

_____
JEFFREY S. BIVINS, JUDGE